**Juan RIVERA–MURIENTE,
Plaintiff, Appellant,**

v.

**Juan AGOSTO–ALICEA, et al.,
Defendants, Appellees.**

**No. 91–1923.**

United States Court of Appeals,
First Circuit.

Heard March 4, 1992.
Decided March 23, 1992.

---

Victor E. Baez, with whom Rosalinda Pesquera Davila and Elias Davila Berrios were on brief, for plaintiff, appellant.

Alice Net Carlo with whom Anabelle Rodriguez, Sol. Gen., Com. of Puerto Rico, Reina Colon de Rodriguez, Deputy Sol. Gen., Carlos Lugo–Fiol, Asst. Sol. Gen., and Garcia Rodon, Correa Marquez & Valderas were on brief, for defendants, appellees.

Before SELYA, Circuit Judge,
FEINBERG,* Senior Circuit Judge, and
CYR, Circuit Judge.

SELYA, Circuit Judge.

Plaintiff-appellant Juan Rivera Muriente (Rivera) appeals an order granting summary judgment against him in a suit brought under 42 U.S.C. § 1983 (1988). We affirm.

## I.

### Background

Consistent with the method of Fed. R.Civ.P. 56, we set forth the documented facts in the manner most congenial to the summary judgment loser.

While on sick leave from his civil service position with the Lottery Bureau of the Puerto Rico Treasury Department, appellant received a letter from the Secretary of the Treasury, defendant-appellee Juan Agosto Alicea (Agosto), notifying him of a potpourri of charges, both criminal and administrative, that had been lodged in connection with the distribution of lottery tickets to unauthorized recipients. The letter was dated March 28, 1988. It gave Rivera fifteen days to seek an administrative hearing. Rivera contends that he requested such a hearing within the allotted time.[1]

No hearing was ever scheduled or held. Rivera never returned to work. He concedes that, in late April of 1988, he was informed by his supervisor that his name had been deleted from the employee roster

and, consequently, he could no longer enter the workplace. Rivera acknowledges that a co-worker verified the information transmitted by the supervisor. Rivera was also told that he would be receiving a final check to liquidate his unused vacation time. He received, and cashed, the vacation-pay check no later than November of 1988.

The following year was a slightly more auspicious one for appellant. In April, the last remaining criminal charges against him were dismissed. In August, Agosto resigned and was succeeded by defendant-appellee Ramon Garcia Santiago (Garcia). On August 30, 1989, Rivera, having done nothing to ameliorate his situation since initially requesting a hearing, wrote to his supervisor, soliciting her intervention. That letter went unanswered.

On April 9, 1990, Rivera sued Agosto and Santiago in the federal district court. Invoking section 1983, he charged that the defendants had deprived him of property (his job) without due process of law and that Agosto, in doing so, had also stigmatized him.[2] Rivera's complaint sought a many-splendored array of relief, including back pay, money damages, and reinstatement to his previous position. In due course, the appellees moved for *brevis* disposition, contending that Rivera's action was time-barred. The district court agreed. 770 F.Supp. 770. Rivera appeals from the ensuing judgment.

## II.

### Applicable Legal Principles

#### A.

■ Summary judgment is appropriate when the record reflects "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this context,

---

* Of the Second Circuit, sitting by designation.

1. The defendants deny that Rivera sought a hearing and the Treasury Department has no record of any request. For reasons that appear *infra*, this fact, though genuinely disputed, is not material to the proper resolution of Rivera's appeal.

2. Although alleging stigmatization in his complaint, appellant has not pressed that point on appeal. Hence, his liberty-interest claim has been forfeited. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.) (issues raised on appeal in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.)*, 960 F.2d 200, 204 (1st Cir.1992). In the same context, "material" means that the fact is one susceptible of altering the outcome of the litigation. *Id.* "On issues where the nonmovant bears the burden of proof, he must present definite, competent evidence to rebut the motion." *Id.; see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir. 1990) ("a mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax").

■ Our review of an order granting summary judgment is plenary. *Garside*, 895 F.2d at 48. In undertaking review, we must scrutinize "the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Nonetheless, the nonmovant cannot content himself with unsupported allegations; rather, he must set forth specific facts, in suitable evidentiary form, in order to establish the existence of a genuine issue for trial. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir. 1988).

■ In a proper case, Rule 56 may be used to determine the applicability of a statutory time bar to a particular set of facts. *See, e.g., Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir.1990); *Kali Seafood, Inc. v. Howe Corp.*, 887 F.2d 7, 9 (1st Cir.1989).

### B.

■ The Due Process Clause of the Fourteenth Amendment shields career civil servants from certain kinds of arbitrary employment actions. *See Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). One attribute of this protection is that the Clause "guarantees public employees who have a property interest in continued employment the right to at least an informal hearing before they are discharged." *Kauffman v. Puerto Rico Tel. Co.*, 841 F.2d 1169, 1173 (1st Cir.1988). *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Roth*, 408 U.S. at 576–77, 92 S.Ct. at 2708–09.

■ Constitutionally cognizable property interests are not created by the Constitution itself; rather, they are creatures of independent rules and understandings. *See Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. A fertile source of such property interests is state law. *See Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491. Appellant, as a career employee, possessed such a property interest in his continued employment. *See Kauffman*, 841 F.2d at 1173 ("Puerto Rico law gives employees with ['career'] status 'property' rights in their continued employment").

■ Notwithstanding Rivera's entitlement to the benefits of due process, he—like any other potential plaintiff—had a corollary obligation to act in a timeous manner. Since appellant's suit was brought under 42 U.S.C. § 1983 (1988),[3] we look to local law to discern the applicable limitation period. *See Wilson v. Garcia*, 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d 254 (1985); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir.1991) (per curiam) ("The Supreme Court directs federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 to borrow the statute of limitations applicable to personal injury actions under the law of the forum state."), *cert.*

---

3. The statute provides in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the dep-
   rivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983 (1988).

*denied*, —— U.S. ——, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992). In Puerto Rico, the limitation period for section 1983 cases is one year. *See, e.g., Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 42 (1st Cir.1990); *Torres v. Superintendent of Police*, 893 F.2d 404, 406 (1st Cir.1990); *De Leon Otero v. Rubero*, 820 F.2d 18, 19 (1st Cir.1987). Hence, Rivera was obligated to sue within one year of the time his cause of action accrued, or forever hold his peace.

■ Although the statute of limitations in section 1983 actions is determined by recourse to the law of the forum state, the date of accrual of such an action is determined in accordance with federal law. *See Street*, 936 F.2d at 40; *Rodriguez Narvaez*, 895 F.2d at 41 n. 5; *Pauk v. Board of Trustees of the City University of New York*, 654 F.2d 856, 859 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). The accrual period in a section 1983 case ordinarily starts when the plaintiff knows, or has reason to know, of the injury on which the action is based. *See Street*, 936 F.2d at 40; *Marrapese v. Rhode Island*, 749 F.2d 934, 936 (1st Cir. 1984), *cert. denied*, 474 U.S. 921, 106 S.Ct. 252, 88 L.Ed.2d 259 (1985).

### III.

### *Analysis*

### A.

■ It is readily evident, based on the foregoing, that the key question in this case is temporal: when did Rivera know, or have reason to know, that he had been deprived of his employment without a pretermination hearing? In answering this question, the district court found that Rivera knew of his injury no later than November 1988 (when he received his accumulated vacation pay from the Treasury Department). Because more than one year elapsed from that date until the date suit was started, a judgment in defendants' favor was entered. We think that the lower court's reasoning was faultless and that it reached a legally correct result.

■ In employment discrimination cases involving wrongful discharges, the statute of limitations begins to run when the plaintiff learns of the decision to terminate his employment (even if the notice he receives is informal). *See Ching v. MITRE Corp.*, 921 F.2d 11, 14 (1st Cir.1990).[4] It is the clarity of the notice received, not whether it is memorialized on official stationery or reduced to writing, that determines the accrual of causes of action premised upon wrongful deprivation of employment under section 1983. *See Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir.1986) ("unequivocal notice of termination is all that is required to start the limitations period running"); *Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1174 (D.Mass.) (all that is necessary in order to trigger the limitations period is that the employer "must unambiguously indicate that a final termination decision has been reached"), *aff'd*, 720 F.2d 658 (1st Cir.1983); *see also* Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* § 9.05 at 265 (3d ed. 1991) ("[I]t is only necessary for the plaintiff in an employment situation to be effectively notified of a discharge for the cause of action to accrue at the time of notification."). In other words, the accrual date for purposes of a section 1983 employment discrimination case is the date when the employee reliably knew he had lost his job, not the date when the employer dotted a particular "i" or crossed a particular "t."

Rivera's case fits snugly within this framework. He had not worked since February 1988. He knew in April of 1988 that his name had been deleted from the employee roster. By his own admission, he understood the check he received in late 1988 to represent a settling-up for his unused vacation time. Most telling of all, he understood, possibly as early as April 1988 and in any event no later than November of

---

**4.** In *Ching*, we were interpreting Massachusetts law, but took pains to note that Massachusetts law appeared to follow, apply, and reasonably extend federal law on this issue. *Ching*, 921 F.2d at 14. We therefore regard *Ching*'s precedential value, for purposes of the case before us, as great.

the same year, that he had been cashiered.[5] The notice of his termination, though not in *written form*, was *clear* to Rivera, to his superiors, to the departmental paymaster, and to the district court. It is equally clear to us. Thus, the court below did not err in ruling that, as a matter of law, the cause of action accrued over a year before Rivera sued.

### B.

Rivera's argument to the contrary is deeply flawed. He contends that, well after he was fired, he continued to await a pre-termination hearing and abandoned this forlorn hope only when Agosto, the official who had brought the charges against him, resigned (making it "legally impossible," in Rivera's words, for Agosto to convene such a hearing). Until then, Rivera's thesis runs, his injury did not become irretrievable, ergo, actionable. This construct, however, is predicated upon a fundamental misunderstanding of the applicable legal principles.

Due process required that appellant receive a pre-termination hearing. *See Loudermill*, 470 U.S. at 542–43, 105 S.Ct. at 1493. By definition, a pre-termination hearing is one that precedes dismissal. Appellant's injury occurred, in constitutional terms, when he was discharged without first being heard. What Agosto did *after* Rivera was terminated could scarcely be relevant to the occurrence of that injury. Put another way, appellant's knowledge that he had been fired was itself the best and most conclusive proof that Agosto had failed to provide him the opportunity for the constitutionally required pre-termination hearing. In the circumstances at hand, appellant was not legally justified in waiting indefinitely once he possessed that crucial knowledge.

Appellant has a fallback position. Whatever might be the rule in a garden-variety case, he urges that a special rule applies here. He predicates this exhortation on the fact that, until Agosto resigned, he did not know to a certainty that no hearing would be held. Refined to bare essence, this exhortation is little more than a plea for special treatment because appellant misapprehended the legal consequences of his employer's actions. We cannot, however, yield to this importuning. When an appellant knows of the fact of his injury, his mistake of law as to the time of its accrual should *not* be allowed to resurrect a time-barred cause of action. *See Torres*, 893 F.2d at 407, *citing United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979) (in medical malpractice case, so long as the plaintiff is aware of "the critical facts that he has been hurt and who has inflicted the injury," the statute of limitations is triggered); Nahmod, *supra*, § 9.04 at 253 (commenting that the medical malpractice discovery accrual rule "is also the rule in § 1983 cases") (listing cases).

### C.

In a last-ditch effort to avoid the unavoidable consequences of his own lassitude, appellant attempts to invoke the doctrine of equitable tolling. His proffer comes too late.

Rivera did not make an equitable tolling argument in his opening brief. Rather, the asseveration surfaced for the first time in his reply brief. It is well settled in this court, for good reason which need not be rehearsed here, that a legal argument made for the first time in an appellant's reply brief comes too late and need not be addressed. *See Sandstrom v. Chemlawn Corp.*, 904 F.2d 83, 86 (1st Cir. 1990). Rivera's equitable tolling argument was waived on appeal.[6]

---

5. Rivera's deposition was taken in Spanish. The certified translation includes the following exchange:

> Q. And you understood at that time that you have been fired?
> A. [Rivera]: Definitely.

The context makes pellucidly clear that the question's reference to "that time" referred to sometime in 1988 (most likely April).

6. We hasten to add that the proffer not only came too late, but contained too little. There are no facts in evidence remotely approaching the kind and quantum of proof that might be

IV.

*Conclusion*

We need go no further. As the district court correctly discerned, the sun had set on appellant's section 1983 claim long before he ventured forth into the judicial arena. His appeal, benighted, fails.

*Affirmed.*

necessary, at the summary judgment stage, to undermine the limitations defense. *See, e.g., Rivera-Gomez v. de Castro,* 900 F.2d 1, 3 (1st Cir.1990) (discussing requirements for invocation of equitable tolling doctrine in employment discrimination cases under 42 U.S.C. § 1983); *Torres,* 893 F.2d at 407–08 (similar); *cf. Jensen,* 912 F.2d at 520 (discussing requirements for equitable tolling in Title VII case).