UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-2231

JOHN P. COYNE, ET AL.,

Plaintiffs, Appellants,

v.

TABER PARTNERS I, d/b/a

AMBASSADOR PLAZA HOTEL & CASINO, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Justo Arenas, U.S. Magistrate Judge]

Before

Selya, Cyr and Stahl, Circuit Judges.

Mark S. Shuman, with whom Jose L. Rivero Vergne and Moreda &
Moreda were on brief, for appellants.
Maria Soledad Ramirez-Becerra, with whom Mercado & Soto was
on brief, for appellees.

May 4, 1995

SELYA, Circuit Judge. This negligence action perished SELYA, Circuit Judge.

when the lower court granted a motion for summary judgment.

Discerning error, we resuscitate the suit.1

I. BACKGROUND I. BACKGROUND

Consistent with the summary judgment standard, we limn

the material facts in a light that flatters, but does not

impermissibly distort, the plaintiff's claims.

On July 8, 1992, a local union representing taxi

drivers and tour operators frustrated by competition from hotel-

operated taxis and other amateurs declared a strike that

virtually paralyzed transportation services at San Juan's

principal airport. Despite a beefed-up police presence, strikers

congregated at various points, including Baldorioty de Castro

Avenue (the main thoroughfare leading to and from the airport).2

The labor unrest was open and notorious; reports of the strike

appeared, inter alia, in the July 9 edition of a major newspaper,

the San Juan Star.

Carol Coyne, a resident of Massachusetts, blissfully

unaware of the strike, flew into the airport on July 9. Because



1Nominally, there are two plaintiffs Carol Coyne and her
husband, John and two remaining defendants Taber Partners I
(Taber), proprietor of the Ambassador Plaza Hotel, and its
insurer, United Community Insurance Co. Since John Coyne's
claims derive from the injuries that his wife sustained, and
since the insurer's liability is coextensive with its insured's,
under local law, we treat the appeal as if Carol Coyne and Taber
were the sole parties in interest.

2The obstructionist tactics met with some degree of success.
For example, the record indicates that strikers thwarted at least
one effort to usher tourists away from the airport by van.

2

she had reserved accommodations at the Ambassador Plaza, Taber

dispatched a driver, Angel Marrero, to transport her from the

airport to the hotel. While waiting for Taber's emissary to

arrive, plaintiff witnessed several confrontations between

strikers and motorists.

Following the same practice he had thrice utilized that

day, Marrero crossed the picket line driving a red Ford rented by

the hotel. When he reached the terminal, he refused to alight

from the vehicle and plaintiff noticed that he seemed frightened.

Once he had collected the plaintiff, other prospective guests,

and their luggage, Marrero headed for the hotel. After the Ford

reached Baldorioty de Castro Avenue, a man stepped in front of it

and blocked its path. Other persons began hurling objects at the

car.3 One such projectile shattered a window and injured the

plaintiff. Marrero eventually managed to extricate the vehicle

from this precarious situation and immediately sought medical

attention for plaintiff.

Some time elapsed. Then, plaintiff, striking a blow of

her own, sued Taber in Puerto Rico's federal district court. See

28 U.S.C. 1332 (1988 & Supp.IV 1992) (stating requirements for

diversity jurisdiction). After preliminary skirmishing, not now

relevant, the court, in the person of a magistrate judge, see 28

U.S.C. 636(c) (1988), granted Taber's motion for brevis

disposition. This appeal ensued.


3A rational factfinder could infer that not only the man who
blocked the Ford's path but also the rock-throwers were strikers
or strike sympathizers.

3

II. THE SUMMARY JUDGMENT STANDARD II. THE SUMMARY JUDGMENT STANDARD

The Civil Rules empower a court to grant summary

judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(c). We have written

prolifically on the nuances and ramifications of this rule, see,

e.g., National Amusements, Inc. v. Town of Dedham, 43 F.3d 731,

735 (1st Cir. 1995), petition for cert. filed, 63 U.S.L.W. 3736

(U.S. Apr. 4, 1995) (No. 94-1630); Vasapolli v. Rostoff, 39 F.3d

27, 32 (1st Cir. 1994); Dow v. United Bhd. of Carpenters, Etc., 1

F.3d 56, 58 (1st Cir. 1993); Pagano v. Frank, 983 F.2d 343, 347

(1st Cir. 1993); Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791,

793-94 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993);

United States v. One Parcel of Real Property (Great Harbor Neck,

New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992); Rivera-

Muriente v. Agosto-Alicea, 959 F.2d 349, 351-52 (1st Cir. 1992);

Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7-8 (1st

Cir. 1990); Garside v. Osco Drug, Inc., 895 F.2d 46, 48-49 (1st

Cir. 1990), and it would be pleonastic to rehearse that

jurisprudence here.

For present purposes, it suffices to say that "summary

judgment's role is to pierce the boilerplate of the pleadings and

assay the parties' proof in order to determine whether trial is

actually required." Wynne, 976 F.2d at 794. A Rule 56 motion

4

may well end the case unless the party opposing it demonstrates

the existence of a trialworthy issue as to some material fact.

Exercising de novo review, see Pagano, 983 F.2d at 347, and

taking the facts (including the reasonable inferences therefrom)

in the light most favorable to the plaintiff, see Rivera-

Muriente, 959 F.2d at 352, we conclude that the evidence of

record in this case is "sufficiently open-ended to permit a

rational factfinder to resolve the [liability] issue in favor of

either side," National Amusements, 43 F.3d at 735. Thus, the

court below terminated the suit prematurely.

III. ANALYSIS III. ANALYSIS

In granting summary judgment, the lower court found

plaintiff's claim wanting in two ways. First, the court ruled

that because the rock-throwing incident took place "outside the

[hotel's] premises," Taber did not owe "a duty to protect and

provide reasonable security measures." Second, the court

reasoned that the harm of which plaintiff complained "was not

foreseeable or causally related to any acts or omissions"

attributable to Taber. We examine each theorem separately.

A. Duty. A. Duty.

The substantive law of Puerto Rico governs the issue of

negligence in this diversity suit. See Erie R.R. v. Tompkins,

304 U.S. 64, 78 (1938); Daigle v. Maine Med. Ctr., Inc., 14 F.3d

684, 689 (1st Cir. 1994). Under Puerto Rico law, negligence

actions generally hark back to article 1802 of the Civil Code,

which imposes liability upon a person who "causes damage to

5

another party through fault or negligence." P.R. Laws Ann. tit.

31, 5141 (1991). In this instance, plaintiff alleges that

article 1057 of the Civil Code, P.R. Laws Ann. tit. 31, 3021

(1991), excerpted in the margin,4 puts a gloss on article 1802.

Taber demurs, asseverating that article 1057 does not apply. We

agree with plaintiff that, here, article 1057 informs the

operation of article 1802. Compare, e.g., Rivera Perez v. Cruz

Corchado, 87 J.T.S. 51 (1987) (Official English Translation: No.

RE-86-18, slip op. at 8) (discussing interface between articles

1057 and 1802).

It brooks no dispute that article 1057 imposes

liability upon certain establishments, such as hotels, schools,

and hospitals, that fail to provide security commensurate with

the circumstances attendant to their operations. See Estremera

v. Inmobiliaria Rac, Inc., 109 P.R.R. 1150, 1154-55 (1980)

(stating that liability can be found when circumstances create a

demand for greater protection, but the establishment nonetheless

neglects to bolster security). The duty to furnish heightened

security is thought to stem from the character of the enterprise

in which the defendant engages and from the special nature of the



4Article 1057 provides in pertinent part:

The fault or negligence of the debtor
consists of the omission of the steps which
may be required by the character of the
obligation and which may pertain to the
circumstances of the persons, time, and place
. . . .

P.R. Laws Ann. tit. 31, 3021 (1991).

6

relationship between the defendant and its invitees. See id. at

1154 (noting that a hotel "basically substitutes [for] a home").

On this rationale, the Commonwealth's courts have made pellucid

that the prospect of criminal activity may give rise to the need

for such an establishment to furnish "a wider scope of protection

and security than can be supplied by law-enforcement agencies."

Id.; accord Elba v. Univ. of P.R., 90 J.T.S. 13 (1990) (Official

English Translation: No. RE-86-214, slip op. at 23) (finding that

university's failure to provide adequate security in a high-risk

rape area gave rise to violent assault of female student).

Notwithstanding these general principles, the

magistrate judge, accepting artificial distinctions drawn by

Taber, ruled that article 1057 landed wide of the mark, and that,

on the facts reflected in the summary judgment record, Taber owed

no duty to furnish security for plaintiff's protection. The

magistrate advanced two theories. Neither holds water.

1. Cabdrivers' Liability. Relying primarily on Jacob 1. Cabdrivers' Liability.

v. Eagle Star Ins. Co., 640 F. Supp. 117 (D.P.R. 1986), the

magistrate posited that, as a matter of law, cabdrivers (and,

ergo, their employers) are not liable to passengers for crimes

committed by third persons. Jacob is not a comfortable fit.

In Jacob, an independent cabdriver transporting fares

from the airport to a hotel paused at a red light. Thieves

rushed the car, held the driver at gunpoint, and attempted to rob

the passengers. In the commotion that ensued, a passenger was

shot. See id. at 118. The district court concluded on the

7

particular facts of the case that a cabdriver had no duty to

guard against third-party criminal activity. See id. at 119. In

reaching its decision the court noted that "[u]nlike a hotel . .

. the nature of [defendant's] business does not demand special

security measures." Id.

Here, however, unlike in Jacob, the defendant is a

hotel, albeit one that is being sued because it elected to

furnish transportation services ancillary to its principal

business. Moreover, unlike in Jacob, where the court emphasized

that the cabdriver was "a public carrier for hire," id., the

operator of the vehicle rented to Taber was not a common carrier

(or even a cabdriver) but an employee of the hotel, performing a

private service for a private purpose. Thus, though Coyne was in

a car, she was just as much a ward of the hotel as if she was in

her suite or in the lobby.

Even assuming, then, that taxicab operators are not

within the reach of article 1057 a matter on which we take no

position we are of the opinion that the defendant here must be

viewed as an innkeeper rather than as a taxicab operator. It

follows, therefore, that the magistrate's reliance on Jacob does

not resonate with the issue of duty in the instant case.

2. Locus. Though Jacob is inapposite, the 2. Locus.

magistrate's opinion raises another question about the existence

of an actionable duty. This question emanates from a dictum in

Chapman v. E.S.J. Towers, Inc., 803 F. Supp. 571 (D.P.R. 1992).

There, the court refused to grant summary judgment, finding the

8

defendant hotel potentially liable for the injuries sustained by

the plaintiff guest as a result of third-party criminal activity.

See id. at 575. Nevertheless, Judge Perez-Gimenez wrote: "Had

the situs of the crime in this case been a place other than the

hotel premises, the Court might not have been hesitant in

granting the defendants' motions . . . ." Id. Citing this

dictum, the magistrate suggested that, even if Taber owed a duty

to provide heightened security qua transporter, that duty

obtained only as to acts that occurred on the hotel's premises.

We place no weight on this slender reed. It is not the

physical locus of the act, stricto senso, that gives rise to the

hotelier's duty to furnish heightened security. Rather, the

touchstone of the duty consists in roughly equal parts of the

hotel's special relationship with its guests, its knowledge of

incipient peril, and its ability to exercise a meaningful degree

of control over the situation, regardless of the situs.

We think this approach is compelled by the reasoning of

the Puerto Rico Supreme Court in Elba. There, the court anchored

the University's duty to provide adequate security to persons

with whom it had a special relationship (students) in knowledge

the "previous occurrence of similar criminal acts [and] the fact

that university authorities knew or should have known about them"

coupled with the nonperformance of acts within the defendant's

control "the failure to eliminate conditions that may give rise

to sexual assaults; the total absence of a priority system to

protect the students; and lack of adequately trained security

9

personnel." Elba, supra, slip op. at 16. Though the rape in

Elba occurred on the campus, we believe that the court's

reasoning clearly indicates that the tri-cornered combination of

affinity, knowledge, and control, rather than a one-dimensional

location test, is the key to determining whether a duty to

provide security exists.

So it is here. Affinity is a given; Taber and the

plaintiff were admittedly in a host-guest relationship.

Knowledge exists, at least to the extent that, as we demonstrate

infra, a reasonable jury could find that Taber knew (or should

have known) of the strike and the likelihood of violence that it

portended. Similarly, a jury could find that Taber had the

requisite degree of control; it employed the driver, rented the

car, made the transportation arrangements with newly arriving

guests, honored Coyne's reservation, dispatched the vehicle, and

selected the route. This combination of affinity, knowledge, and

control is sufficient to trigger a legally enforceable duty.

We have said enough on this score. Bearing in mind

"the circumstances of the persons, time, and place," we think a

jury could supportably find that a duty to provide security arose

under P.R. Laws Ann. tit. 31, 3021. See Estremera, 109 P.R.R.

at 1154 (stating that a duty to provide additional security may

arise when the circumstances so warrant); see also Rivera Perez,

supra, slip op. at 8. And since there is no evidence at this

stage that Taber employed any special security precautions, we

believe that a jury, not a judge, ought to say whether Taber

10

failed to take steps that its duty required.5 See Negron v.

Orozco Rivera, 113 P.R.R. 921, 929 (1983).

B. Foreseeability. B. Foreseeability.

Even if a jury could find that Taber violated a duty

owed to plaintiff, a breach of duty is not actionable absent a

causal relationship between the breach and the ensuing harm. See

Elba, supra, slip op. at 12. "[F]or this causal relation to

exist the damage must have been foreseeable and avoidable had the

omitted action been timely taken." Id.; see also Malave-Felix v.

Volvo Car Corp., 946 F.2d 967, 972 (1st Cir. 1991) (noting that

foreseeability serves as the "linchpin" for establishing tort

liability under Puerto Rico law). In Puerto Rico, "the rule of

foreseeability does not mean that the precise risk or the exact

result which was encountered should have been foreseen. The

essential factor is to be under a duty to foresee, in a general

way, consequences of a particular type." Gines v. Aqueduct &

Sewer Auth., 86 P.R.R. 490, 496 (1962) (citing 2 Harper and

James, The Law of Torts 1147 (1956)) (emphasis supplied).

In most situations, causation questions are both

factbound and case-specific. Thus, such questions ordinarily are

grist for the factfinder's mill. See, e.g., Peckham v.

Continental Cas. Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990);

Swift v. United States, 866 F.2d 507, 510-11 (1st Cir. 1989);

Springer v. Seamen, 821 F.2d 871, 876 (1st Cir. 1987). Puerto


5We do not decide today that Taber could, or should, have
taken any particular security precautions. We hold only that it
is for the jury, not the judge, to make this determination.

11

Rico follows this general trend. See, e.g., Quinones-Pacheco v.

American Airlines, Inc., 979 F.2d 1, 5-6 (1st Cir. 1992)

(applying Puerto Rico law); Marshall v. Perez Arzuaga, 828 F.2d

845, 847-48 (1st Cir. 1987) (applying Puerto Rico law), cert.

denied, 484 U.S. 1065 (1988).

This does not mean that foreseeability is always a jury

question. To establish the foreseeable character of an event,

the evidence must be such that the factfinder rationally can

conclude that the risk complained of is among the universe of

risks recognizable by reasonably prudent persons acting with due

diligence under the same or similar circumstances. See Pacheco

v. Puerto Rico Water Resources Auth., 112 D.P.R. 367, 372 (1982);

Jimenez v. Pelegrina, 112 P.R.R. 881, 886 (1982). Because a

defendant "will not be relieved of liability by an intervening

cause which could reasonably have been foreseen, nor by one which

is a normal incident of the risk created," Widow of Andino v.

Puerto Rico Water Resources Auth., 93 P.R.R. 168, 178 (1966),

criminal acts of third parties sometimes can fall within the

ambit of foreseeability. See Chapman, 803 F. Supp. at 573; Elba,

supra, slip op. at 23; Negron, 113 P.R.R. at 927-28; Estremera,

109 P.R.R. at 1157 n.6. Accordingly, the issue we must decide is

whether the facts and circumstances of this case permit a

factfinder plausibly to infer a foreseeable risk of episodic

violence. See Rivera Perez, supra, slip op. at 8 ("If the fault

or negligence on which the liability of 1802 is predicated

consists, pursuant to 1057, in the failure to be diligent

12

according to particular circumstances, . . . 1802 inevitably

centers around the function of the person's foresight, as [the]

controlling factor of [defendant's] liability. . . .") (quoting

Rivera v. Maryland Cas. Co., 96 P.R.R. 788, 791 (1968)).

The magistrate concluded that violence was not

reasonably foreseeable. Though he may, in the end, prove to be

an accurate prophet as a matter of decided fact only a jury can

answer that question definitively courts are constrained by

Rule 56 to draw all reasonable inferences in the nonmovant's

favor. See National Amusements, 43 F.3d at 735. On this basis,

the current posture of the case demands that we reject the

magistrate's conclusion as a matter of law. We explain briefly.

Both parties place great weight upon the fact that

Marrero drove to and from the airport three times on July 9, in

the same red Ford, transporting other, earlier-arriving hotel

guests without incident. Taber argues that, since the driver had

traversed the route in safety on these previous occasions, it

could not have foreseen the violent reception that awaited the

plaintiff. Coyne parries this thrust by asserting that, in

ordering Marrero to drive through the airport a fourth time in

the same easily recognizable automobile, on the very sort of

errand that prompted the strike, the hotel should have realized

that it was tempting fate. In short, defendant uses the earlier

trips as evidence that peril was not foreseeable, whereas

plaintiff uses them not only as evidence of discernible danger

but also to show that Taber's activity in fact catalyzed the

13

harm-producing event.

Both of these scenarios are plausible from a factual

standpoint. For present purposes, that ends the inquiry: when

the facts support plausible but conflicting inferences on a

pivotal issue in the case, the judge may not choose between those

inferences at the summary judgment stage. See, e.g., Greenburg

v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 937 (1st

Cir. 1987) (explaining that, if the evidence conflicts, "the

ultimate arbiter of the persuasiveness of the proof must be the

factfinder, not the lawgiver").

Taber has a fallback position. It argues that the

incident was not foreseeable because it lacked knowledge of the

strike's explosive nature. This, too, seems sufficiently

factbound to warrant jury consideration. To be sure, the attack

on the Ford may have been the first incident of its kind during

the July strike but that happenstance is not dispositive. If a

dog has vicious propensities, even the first bite may well be

foreseeable. "It is no defense to allege that the precise course

or the full extent of the consequences could not be foreseen, the

consequences being of such kind, which in fact happened." Gines,

86 P.R.R. at 496.

Here, the strike was no secret. The strikers'

propensities were fairly evident. The jury could find that the

article in the San Juan Star furnished constructive notice of the

14

tense circumstances and the potential for violence.6 The

plaintiff's observation of events at the airport before Marrero

arrived lends some slight support to the inference that the rock-

throwing incident was foreseeable. So does the evidence anent

the driver's demeanor.

Another piece of evidence is potentially significant.

In opposing summary judgment, plaintiff submitted the affidavit

of Capt. Hector Mercado Santini, a security consultant.

Plaintiff's expert noted that violence commonly accompanies labor

disputes in Puerto Rico and that this tendency is well known.

He cited violent incidents that had occurred during earlier

strikes at the airport (including strikes called by the taxi

drivers' union). He expressed the opinion that Taber acted

irresponsibly in thrice sending the same driver in the same car

on the same errand on the same day across the picket line.7


6Taber argues that this article is hearsay evidence that
should be excluded from consideration. This argument overlooks
that plaintiff did not offer the article for the truth of the
matter asserted, but, rather, as tending to establish that the
hotel's management knew or should have known of the volatile
nature of the labor protest. The proffer was admissible for this
purpose. See, e.g., Price v. Rochford, 947 F.2d 829, 833 (7th
Cir. 1991) (deeming newspaper articles admissible because
plaintiff "did not offer the articles to prove that he was in
bankruptcy, only that he was reported to have been in bankruptcy)
(emphasis in original); see generally Fed. R. Evid. 801(c)
(defining hearsay as "a statement . . . offered in evidence to
prove the truth of the matter asserted").

7Citing Casas Office Machs., Inc. v. Mita Copystar, Inc., 42
F.3d 668 (1st Cir. 1994), Taber argues that the expert's
affidavit should not be considered. This argument is
unconvincing. In Casas, we confirmed that a district court had
discretion to exclude expert opinion testimony based on a
speculative foundation. See id. at 681-83. Here, however, the
lower court did not exclude the expert's affidavit. Indeed, it

15

These items of evidence, taken collectively,

distinguish this case from Rivera Perez, supra, slip op. at 8

(finding wife not liable for ex-husband's attack on house guest

because she lacked knowledge of his criminal predisposition) and

Estremera, 109 P.R.R. at 1158 (finding criminal attack would have

occurred regardless of whether defendant provided stairwell

lighting), and make it more akin to Elba, supra, slip op. at 20

(concluding that circumstances made sexual assault of female

student foreseeable because school officials had knowledge of

high-risk rape area) and Negron, 113 P.R.R. at 928 (holding that

a reasonable person would have foreseen criminal act in police

station, given the known presence of a violent individual).

Taking the facts favorably to the plaintiff, we believe that a

jury reasonably could find that plaintiff's injuries were a

generally foreseeable consequence of Taber's decision repeatedly

to shuttle guests between the airport and the hotel in the same

distinctive private car, chauffeured by the same lone driver, at

the height of the strike, without taking any particular security

precautions. Put another way, the case at hand yields an issue

of foreseeability upon which reasonable minds might differ.

Summary judgment is, therefore, inappropriate.

IV. CONCLUSION IV. CONCLUSION

We need go no further. Viewing the evidence in the

light most congenial to the plaintiff, a rational jury could find

all the elements of a viable cause of action: duty, breach,


never reached the issue.

16

causation, and foreseeable harm. Thus, the plaintiff is entitled

to present her case at a full-dress trial.

Reversed and remanded for further proceedings. Reversed and remanded for further proceedings.

17