**Lily Anne GUTIERREZ–USERA; Walter Arroyo Carrasquillo, and their Conjugal Partnership, Plaintiffs,**

v.

**PUERTO RICO TELEPHONE COMPANY; Puerto Rico Telephone Authority; Augustin Garcia, his wife Joanna Doe, and their Conjugal Partnership, Defendants.**

**Civil No. 97–1353 (JAF).**

United States District Court,
D. Puerto Rico.

May 30, 1997.

---

Jose E. Andino–Delgado, Anibal Escanellas–Rivera, San Juan, PR, for Plaintiffs.

Isabel Abislaiman–Quilez, John M. Garcia, Garcia & Fernandez, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff Lily Anne Gutiérrez–Usera sues for employment discrimination under 42 U.S.C. § 1983 (1988), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117(a) (1990), and makes a retaliation claim under both statutes. Plaintiff has not opposed a motion to dismiss by defendants Puerto Rico Telephone Company (PRTC), Puerto Rico Telephone Authority, and Agustín García, then President of PRTC. Plaintiff's husband and their conjugal partnership have brought their own claims for damages under Section 1802 of the Puerto Rico Civil Code, 32 L.P.R.A. § 5141 (1990).

### I.

### Facts

Plaintiff Lily Anne Gutiérrez–Usera worked as a receptionist for the PRTC in July 1985 until her promotion to Coordinator of the Office of the President on November 4, 1991, where she worked until early 1993. At that time, the government of Puerto Rico and the PRTC administration changed from the Popular Democratic Party (PDP) to the New Progressive Party (NPP). Ms. Gutiérrez–Usera was a member of the PDP. Plaintiffs claim that the PRTC, under Mr. García's leadership, purged the organization of PDP members to replace them with NPP members.

Plaintiff alleges that in early 1993, defendants replaced her with an NPP member as the coordinator of the Office of the President. They reassigned her to different posts ever since the events after the 1993 transfer of power. From April 1993 to February 1994, Ms. Gutiérrez–Usera worked as a stenographer.[1] She filed an official grievance with the PRTC on July 26, 1994, after which she occupied various positions in the Consumer Affairs Department. After another reassignment, Ms. Gutiérrez–Usera filed another grievance on September 19, 1994, and a third a month later. Although her claims were rejected by the PRTC, the Puerto Rico Circuit Court of Appeals has reversed this ad-

---

1. Plaintiff has not specified her duties in any of the positions she held at any point.

ministrative decision and the outcome is still pending.[2]

Plaintiff also makes dateless allegations about harassment, lack of training, and Ms. Gutiérrez–Usera's illness as a result of the employment changes. Plaintiff alleges that defendants knew of her illness but does not allege any specific discrimination based on the illness.

## II.

### Motion to Dismiss Standard

A defendant may move to dismiss an action against it based only on the pleadings for "failure to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993). However, the court will not accept plaintiff's unsupported conclusions or interpretations of law. *Id.*

## III.

### Statute of Limitations in Section 1983 Actions

#### A. Legal Standard

■ Fortunately, the law presents two clear elements to the determination of whether a section 1983 action is timely. First, local law determines the relevant statute of limitations under section 1983. *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992). In Puerto Rico, the relevant statute of limitations requires that a case be filed within a year of the injury. *Id.* at 353. Second, the rule for when the action accrues depends on federal law. *Id.* The action starts to accrue when the "plaintiff knows, or has reason to know, of the injury on which the action is based." *Id.*

In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court decided the limi-

tations period in a Title VII case began when the plaintiff first knew of the discriminatory act. The clock does not wait until the "consequences of the act become painful," *Id.* at 258, to start ticking. In *Chardón v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the Supreme Court followed the *Ricks* holding that the accrual of the section 1983 action began when the employee learned of the decision to terminate, and not the generally subsequent elimination from the payroll.

#### B. Analysis

■ There is no serious question regarding the time at which Ms. Gutiérrez–Usera learned of her dismissal. She filed her grievances from August to October 1994, two-and-a-half years before filing the instant case. In the complaint, the only substantive document filed by plaintiffs in this case, the only conceivable date of notice, is the time of her grievances, when it became apparent to Ms. Gutiérrez–Usera that she was the object of employment discrimination. Given that the incidents leading up to her filing a grievance serve as the sole cause of action here, we must dismiss the section 1983 claim, since it was filed well beyond the limit imposed by the statute of limitations.

## IV.

### The Americans With Disabilities Act

#### A. Legal Standard

■ The ADA itself contains a broad, Title VII-like non-discrimination duty, prohibiting a covered entity from discriminating against a "qualified individual with a disability" on the basis of that individual's disability with respect to any term, condition, or privilege of employment. *See* 42 U.S.C. § 12112 (1990); 42 U.S.C. § 2000e–2 (1988). ADA also includes a definition of discrimination similar to Title VII's definition. *See* 42 U.S.C. § 12112(b); 42 U.S.C. § 2000e–2. Congress expressly codified in ADA the disproportionate impact theory of discrimination that has been developed in Title VII cases, *see* 42

---

**2.** The procedural history provided by defendants in their motion to dismiss provided more detailed facts which we accept absent plaintiffs' opposition. This history only concerns the ad-

ministrative claim which plays no role in our analysis, which views the facts in the light most favorable to plaintiffs.

U.S.C. § 12112(b)(3) (1990), and adopted the "reasonable accommodation" and "undue hardship" language of Title VII, although it expanded the definition of these terms in ADA. *See* 42 U.S.C. § 12111(9) & (10); 42 U.S.C. § 2000e(j). Section 12117 of ADA incorporates all the enforcement mechanisms and remedial provisions of Title VII. 42 U.S.C. § 12117. Thus, because both ADA and Title VII proscribe discriminatory conduct in the employment sphere, we believe that the manner by which an ADA plaintiff establishes a *prima facie* case can be similar to the manner employed by a Title VII claimant.

ADA's precursor is the Rehabilitation Act of 1973, 29 U.S.C. §§ 794–794a (1988), which proscribes government agencies, federal contractors, and recipients of federal aid from discriminating against individuals with disabilities. Because ADA was patterned after the Rehabilitation Act, both of these statutes aiming to deter unlawful discrimination toward the disabled, courts have construed ADA consistent with judicial interpretations of the Rehabilitation Act. *Patton v. TIC United Corp.*, 77 F.3d 1235 (10th Cir.1996), *cert. denied*, —— U.S. ——, 116 S.Ct. 2525, 135 L.Ed.2d 1049 (1996); *Collings v. Longview Fibre Co.*, 63 F.3d 828 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996); *Wooten v. Farmland Foods*, 58 F.3d 382 (8th Cir.1995); *Flynn v. Raytheon Co.*, 868 F.Supp. 383 (D.Mass. 1994).

The framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), has been used in evaluating claims pursuant to the Rehabilitation Act, *see Crawford v. Runyon*, 37 F.3d 1338 (8th Cir.1994), *appeal after remand*, 79 F.3d 743 (8th Cir.1996); *Barth v. Gelb*, 2 F.3d 1180 (D.C.Cir.1993), *cert. denied*, 511 U.S. 1030, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994); *Teahan v. Metro–North Commuter R. Co.*, 951 F.2d 511 (2d Cir.1991), *cert. denied*, 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992), *on remand*, 63 U.S.L.W. 2511 (S.D.N.Y., Dec.27, 1994) (No. 88 CIV. 5376(BN)), *judgment aff'd*, 80 F.3d 50 (2d Cir.1996).

■ Nonetheless, we are aware that the *McDonnell* paradigm requires certain modifications when applied to an ADA case. To constitute a *prima facie* case of employment discrimination under ADA, plaintiff must show that: (1) he was "disabled" as that term is defined in ADA; (2) he was qualified, with or without accommodation, to do his job; (3) he was discharged; and (4) he was replaced by a non-disabled person. *See Nedder v. Rivier College*, 908 F.Supp. 66, 74 (D.N.H. 1995). *See McDonnell*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13 ("[t]he facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not necessarily applicable in every respect to differing factual situations").

## B. *Analysis*

■ The ADA claim presented by plaintiff is fatally flawed. First, Ms. Gutiérrez–Usera's illness does not meet the definition of disability according to the ADA, which requires (1) an impairment, (2) a record of that impairment, (3) being regarded as having such impairment, or (4) being related or associated to someone with an impairment. 42 U.S.C. § 12102(2). Ms. Gutiérrez–Usera claims having been ill, but indicates no impairment. She does, however, indicate that the defendants were aware of her illness. She does not discuss her qualification for her job and she only indicates that her replacement was a member of another political party. In sum, she fails to present even the thinnest ADA case. For this reason, we dismiss the ADA claims.

## V.

### *Retaliation Claim*

#### A. *Legal Standard*

*Pontarelli v. Stone*, 930 F.2d 104, 113 n. 15 (1st Cir.1991), lays out the requirements for a *prima facie* retaliation claim under section 1983: The plaintiff must show that she engaged in constitutionally-protected conduct which motivated defendants' decision to dismiss plaintiff. *Id. See also, Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S.

274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

■ With reference to Title VII, the ADA rule requires a plaintiff claiming retaliation to "show that he was engaged in protected conduct, that he was discharged, and that there was a causal connection between the discharge and the conduct." *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997), *citing Wyatt v. City of Boston*, 35 F.3d 13, 15 (1st Cir.1994).

### B. *Analysis*

■ Plaintiff claims that defendants retaliated against her for raising her political and disability claims. Since Ms. Gutiérrez–Usera has not proven even the most basic elements of either of those claims, she cannot sustain the first or any prong of the retaliation tests. Nor does plaintiff provide any facts to support her *ad hominem* causal connection. Without proof of protected conduct or causation, we must dismiss the retaliation claims under section 1983 and ADA.

### VI.

### *Conclusion*

We, therefore, **GRANT** defendants' motion and **DISMISS** all claims proffered by plaintiffs. Lacking any federal claim for jurisdiction purposes, the pendent local law claims are **DISMISSED WITHOUT PREJUDICE.**

IT IS SO ORDERED.