**Gennaro DANIELE**

v.

**CITY OF SPRINGFIELD, et al.**

**Civil Action No. 96–30056–MAP.**

United States District Court,
D. Massachusetts.

Aug. 1, 1997.

Mark E. Draper, Annino, Draper & Moore, P.C., Springfield, MA, for Plaintiff.

Eugene J. Mulcahy, Harry P. Carroll, City of Springfield Law Dept., Springfield, MA, for Defendants.

## MEMORANDUM REGARDING DEFENDANTS' MOTION TO DISMISS
### (Docket No. 18)

PONSOR, District Judge.

### I. INTRODUCTION

Gennaro Daniele, former auditor of the City of Springfield, has brought this action under 42 U.S.C. § 1983 and Massachusetts state law against the City, its Mayor, the City Solicitor, and Springfield's Personnel Director for violation of his civil rights, arising from his indefinite unpaid suspension following allegations against him of sexual harassment.

The defendants have moved to dismiss the complaint, arguing (1) that as a matter of federal law the City could not be found to have violated the plaintiff's civil rights, (2) that the individual defendants are entitled to qualified immunity and (3) that the actions of the defendants do not amount to a violation of state law. Since the defendants' motion relies on documents outside the pleadings, the court has treated it under Fed.R.Civ.P. 12(c) as a motion for summary judgment, and

given the plaintiff the opportunity to demonstrate under Rule 56(f) that he is entitled to discovery before a ruling issues.

The court has considered at length defendants' argument that no conceivable discovery proposed by the plaintiff could generate facts that would enable his case to avoid summary judgment. In the end the court has concluded that plaintiff is entitled to limited discovery—somewhat less than he has requested—before the court addresses defendants' motion on the merits. The motion will therefore be denied, without prejudice, and plaintiff will be afforded ninety days for completion of reasonable discovery and supplemental submissions before the court reconsiders its ruling.

## II. STANDARD

Summary judgement is appropriate only if—in the light of all the evidence on record—there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A fact is genuinely at issue if the disputed evidence about the fact is " 'such that a reasonable jury could resolve the point in favor of the nonmoving party.' " *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992) (*quoting United States v. One Parcel of Real Property, Etc.*, 960 F.2d 200, 204 (1st Cir.1992)). A fact is material if it " 'carries with it the potential to affect the outcome of the suit under the applicable law.' " *One National Bank v. Antonellis*, 80 F.3d 606, 608 (1st Cir.1996) (*quoting Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993)).

It is within the discretion of the court to withhold summary judgment if the party opposing it has not had an opportunity to discover facts that can reasonably be expected to create a trial worthy issue. *See Paterson–Leitch v. Massachusetts Elec.*, 840 F.2d 985, 988 (1st Cir.1988) (Fed.R.Civ.P. 56(f) comprises a procedural "escape hatch" for a party who genuinely requires additional time). Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons

stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other orders as is just.

To benefit from Rule 56(f), the requesting party must (1) articulate a plausible basis for believing that discoverable materials exist which would raise a genuine issue of material fact, and (2) demonstrate good cause for failure to have conducted the discovery earlier. *Fennell v. First Step Designs*, 83 F.3d 526, 531 (1st Cir.1996) (internal quotations omitted) (*quoting Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir.1991)). Trial courts then balance the burden and expense of the proposed discovery against the significance of the evidence sought. *Id.* at 532 (*citing* Fed.R.Civ.P. 26(b)(2)). The breadth of the court's discretion in this balancing decision—as in other areas of discovery—is very great. *Id.* (*citing Fusco v. General Motors Corp.*, 11 F.3d 259, 267 (1st Cir.1993)).

## III. PROCEDURAL AND FACTUAL BACKGROUND

Gennaro Daniele became Springfield's City Auditor January 1, 1994, through appointment by former Mayor Robert Markel. From October or November, 1995, to January 10, 1995, Kathy Kelly ("Kelly"), the City's Deputy Auditor, made multiple informal complaints to individuals in the City's Personnel Department alleging that Daniele was sexually harassing her.

On January 10, 1996, Kelly met with Daniele and informed him that she believed his conduct constituted sexual harassment. On January 19, 1996, Joanne Raleigh ("Raleigh"), another employee in the Auditor's Department, gave Daniele a letter accusing him of sexually harassing her in the past and continuing to create a hostile work environment. Dan Hall, the City's Equal Employment Administrator, scheduled a January 24th meeting between defendant Joseph Dougherty ("Dougherty"), Personnel Director of the City, Kelly, Raleigh, Daniele, and himself. Plaintiff asserts that notice of

this meeting was the first time he knew that the Personnel Department was acting in response to complaints of sexual harassment against him.

The City canceled the January 24 meeting without explanation. Before the scheduled date of the meeting Kelly informed Hall that she, Raleigh, and Antoinette Capuano ("Capuano"), a third female City employee, wanted to meet with him privately to discuss filing formal complaints against Daniele. On January 25th, without advising Daniele, Hall gave the three women formal complaint forms. These were never filed with the Personnel Department.

On February 5, 1996 Kelly and Raleigh accompanied by their attorney, met with Dougherty and Acting Associate City Solicitor Kathleen Breck in order to provide testimony against Daniele. Over the next three days Dougherty and Breck also met with Capuano and six other City employees whose testimony allegedly substantiated Kelly and Raleigh's claims of sexual harassment.

On or about February 12, 1996, Daniele met with Dougherty at the Personnel Department and was informed by Dougherty that he was being placed on paid administrative leave immediately and for an indefinite period, due to pending and "serious" allegations of sexual harassment against him. Daniele was told in writing not to return to the Auditor's Department or to his personal office in City Hall. He was advised to retain an attorney.

Defendant Michael Kogut, Springfield's City Solicitor, sent plaintiff a letter on February 23, 1996, which (without revealing the identities of Daniele's accusers) provided the plaintiff with the City's "Preliminary Findings" regarding the accusations. The letter also noted that the investigation to substantiate these initial findings was continuing. He was invited to respond to the preliminary findings in writing before March 1st.

On February 27, 1996, Daniele's counsel delivered a letter to Kogut claiming that Daniele's due process rights were being violated and requesting the names of the persons making accusations and the names of supporting witnesses. On February 29,

1996, Kogut responded providing the names of the three accusers and the six witnesses who in the eyes of the City substantiated their accounts.

On March 1, 1996, counsel for Daniele was provided summaries of the testimony taken on February 5 and 6 from Kelly, Raleigh and Capuano. These summaries were abbreviated versions of the women's testimony, which had not been transcribed, recorded, or taken under oath. The summaries were little different in content from the preliminary findings, which had been supplied to Daniele on February 23.

The complaints describe repeated instances of Daniele making sexually suggestive remarks in front of other employees and engaging in *quid pro quo* harassment. Kelly testified that Daniele had made comments such as "great legs" or "turn around so that I can get a better look" as well as directly propositioning her during work hours to "have an affair" with him. Kelly also alleges that he called her at home repeatedly to ask her out and that Daniele required her to discipline their secretary according to whether that secretary's relationship with Daniele was "on" or "off."

Raleigh alleged that she had been subject to very similar behavior a few years earlier and that Daniele was continuing to create a hostile work environment. Specifically, she alleges that Daniele sent her flowers at work and became upset when others sent her flowers. She also claims that he invited her to go on a cruise with him and left a travel brochure on her desk. Raleigh further charges that after she desisted from weekly lunches with Daniele due to her concerns about rumors, he instructed her that she could no longer direct work questions to him but would instead have to go through a third party. Finally, Raleigh reports that sometime in September of 1991 Daniele turned his focus away from her and towards Kelly.

Capuano describes an incident in which Daniele allegedly called out to her "I'm going to ask your father if I can sleep with you" while on the phone with her father and after her father had hung up stated: "Your father says I can sleep with you." After Capuano's father came in to meet with Daniele regard-

ing the incident, he was reportedly made to wait for three hours; afterwards Capuano alleges Daniele would not speak to her for ten months. Capuano further alleges that Daniele was romantically involved with his secretary in an on-again-off-again relationship, and that she once had inadvertently come upon them on the floor together in his locked office. She reports that in 1989 she returned from vacation to learn that she had been demoted and that the secretary in question had been promoted to her job.

The court has recited these charges not to suggest that they are either true or untrue. Daniele has adamantly denied them. The purpose of summarizing the complaints is to note the seriousness of the allegations against plaintiff and the degree of disclosure made to him and his attorney by the defendants.

On March 1, 1996, the same day Daniele received the summaries, Kogut wrote to the Mayor and reported to him that the Law Department and the Personnel Department had conducted an investigation into claims of sexual harassment against Daniele and had found evidence to substantiate those claims. The Mayor informed Daniele the same day that, based on the recommendation of the City's Law Department, he was removing him from his position as City Auditor effective at 5:00 p.m. Albano also informed Daniele that he would call a Special Meeting of the City Council for Wednesday, March 6, 1996 at 6:00 p.m. for the purpose of obtaining their approval of his removal.

On March 6 the City Council convened and voted to "table" the Mayor's letter requesting approval of Daniele's removal, based on Kogut's representation that he would advise the Mayor to refer the harassment allegations to the Massachusetts Commission Against Discrimination ("MCAD"). The Council also stated that Daniele was to remain on *paid* administrative leave.

On March 29, 1996, the Mayor sent Daniele a letter that informed him that based on (1) the Mayor's March 1 letter of removal, (2) the City Council's vote to table the matter of Daniele's removal and (3) the "City's critical need for the continued operation of the City Auditor's Department," he was being placed on leave *without compensation* effective April 3, 1996 at 5:00 p.m. Albano further advised Daniele that he had until 4:30 p.m. on April 3, 1996 to respond in order to be heard on the issue of leave without compensation.

On April 1, 1996, Albano filed a Verified Complaint with the MCAD against Daniele, and on April 2, 1996, the plaintiff's counsel met with Dougherty and a Deputy City Solicitor on the issue of leave without compensation effective April 3, 1996. The record contains very little evidence about what happened at this meeting. On the advice of counsel, Dougherty refused to describe to plaintiff's counsel the legal basis for the Mayor's directive to place Daniele on leave without compensation. That same day, Kelly filed a verified complaint with the MCAD against Daniele.

On April 4, 1996, Daniele filed this complaint, alleging that the City of Springfield, Mayor Albano, City Solicitor Kogut, and Personnel Director Dougherty had violated his right to due process as guaranteed by the Constitutions of both the United States and the Commonwealth of Massachusetts. On April 18, 1996, this court denied a motion for preliminary injunction in which plaintiff sought restoration to his job. On July 31, 1996, defendants filed the motion to dismiss now before the court.

## IV. DISCUSSION

The general law controlling the issues of this case is straightforward. First, a violation of 42 U.S.C. § 1983 may be made out if the plaintiff shows two things: the defendants deprived the plaintiff of a right or rights secured under the Constitution or laws of the United States, and the defendants acted under the color of state law. *Martinez v. Colon,* 54 F.3d 980, 984 (1st Cir.1995).

Second, even where a violation occurs, individual government officials may sometimes enjoy qualified immunity under 1983. Officials will not be held liable for discretionary actions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable official would have been aware. *Harlow v. Fitzger-*

*ald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Third, an office holder is only entitled to due process prior to termination if he possesses a property interest in his position. The extent of this interest will be defined by state law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). The only state law defining the property interest of a City Auditor is set forth in Section 3 of Chapter 656 of the Acts of 1989 ("the Act"), which states in a single relevant sentence: "[t]he City Auditor shall be subject to removal by the Mayor with approval of the City Council, by majority vote."

■ Fourth, assuming a property interest, the Due Process Clause of the Fourteenth Amendment demands notice and opportunity to be heard before adverse action may be taken against a public employee. *Loudermill* at 546, 105 S.Ct. at 1495. The pre-termination hearing, however, need not be elaborate and may be something less than a full evidentiary hearing. *Id.*

■ Finally, to support a claim under § 1983 against a city, it is necessary for the plaintiff to demonstrate that the Constitutional violation emanated from a municipal custom or policy that was the moving force behind the deprivation of the Constitutional right. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A city may not be held responsible for the acts of its employees on a theory of *respondeat superior.*

The defendants' motion to dismiss is anchored on three arguments: first, the plaintiff has failed to set forth sufficient allegations in his complaint that could conceivably support a finding that the Constitutional violation here was caused by any municipal custom or policy; second, the three individual defendants are entitled to qualified immunity as a matter of law and, third, the absence of "intimidation, threats or coercion" forecloses any possible claim under the Massachusetts constitution.

If the question were simply the suspension of the plaintiff from office and his placement on *paid* leave status, even indefinitely, the court would be inclined to allow the motion to dismiss without permitting further discovery. Even assuming plaintiff had a property interest in his job, he received all the process due him before his suspension.

The transformation of plaintiff's suspension from paid to *unpaid* status, however, may present more troubling issues. State law would appear to require the mayor to obtain approval of the City Council by a majority vote before "removing" the city auditor. Defendants' argument that indefinite unpaid suspension is not equivalent to removal seems, at least at this point, to be rather thin. If the plaintiff suffered, in essence, a *de facto* "removal" on April 3, 1996 when he was placed on indefinite unpaid leave, then (depending on the evidence) a factfinder may ultimately decide that this act was taken in a manner contrary to state law. Defendants' position is weakened further by the shaky rationale offered by the Mayor for his action in his March 29, 1996 letter. Moreover, at least at this stage, it is not clear that the meeting between plaintiff's counsel and the defendant Dougherty on April 2, 1996, at which Dougherty was instructed not to respond to questions regarding the legal basis for the mayor's action, will necessarily be found to be sufficient to satisfy the dictates of due process, under the *Loudermill* standard. In fact, the present record does not even reveal precisely what happened at this meeting.

Given these questions, the court is persuaded that plaintiff must be afforded some further discovery, focused carefully on the issues raised by defendants' motion. Many of the plaintiff's requests for discovery expand far beyond the issues raised by the defendants' motion to dismiss. Thus, plaintiff seeks to depose the entire membership of the Springfield City Council, twelve unnamed members of the City Auditor's Department and unidentified persons involved in previous sexual harassment complaints. No plausible basis has been offered for this discovery in the context of the defendant's pending motion.

Plaintiff is, however, entitled to take discovery with regard to all facts leading up to and surrounding the decision to transform his indefinite suspension from paid to unpaid status. Plaintiff will therefore be permitted to take the depositions of the three individual defendants on this issue and on the issue of the City's policy and custom regarding treatment of employees charged with misconduct. This discovery may generate facts pertinent to the defendants' motion.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss is hereby DENIED, without prejudice. Plaintiff will have until September 30, 1997 to complete the depositions of the three individual defendants. A supplemental memorandum, if any, may be filed in opposition to the defendants' motion no later than October 20, 1997. Defendants may reply no later than October 31, 1997. Either party may request further oral argument, if it is deemed helpful; otherwise, the motion will be reconsidered in light of the additional discovery, on the papers.