**Dr. Hitoshi OMBE, Plaintiff,**

v.

**Juan R. FERNANDEZ, et. al., Defendants.**

**Civil No. 92–2461(SEC).**

United States District Court, D. Puerto Rico.

Feb. 5, 1996.

Nora Vargas–Acosta, Rio Piedras, PR and Wilma E. Reverón–Collazo, San Juan, PR, for plaintiff.

Luis M. Vázquez–Rodríguez, San Juan, PR, for defendants.

## ORDER

CASELLAS, District Judge.

Pending before the Court is defendants' Motion for Summary Judgment (**Docket # 24**). After a careful analysis of the parties' argument and applicable law, defendants' Motion for Summary Judgment is **GRANTED.**

Plaintiff brings this action pursuant to 42 U.S.C. § 1981 and § 1983 and the Fifth and Fourteenth Amendment to the United States

Constitution. This is also an action for declaratory and injunctive relief and damages under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e–3 et. seq. Plaintiff also invokes pendent jurisdiction of the Court to hear and decide claims arising under the laws of Puerto Rico, to wit: Art II, § 7 of the Constitution of Puerto Rico; Law 80 of May 30 of 1976 on Wrongful Discharge; Law 100 of June 30, 1959 and Art. 1802 of the Civil Code of Puerto Rico.

## I. Plaintiff's § 1983 Claim pursuant to Violation of Due Process Under the Fifth and Fourteenth Amendment

The Fourteenth Amendment of the United States Constitution provides that no person shall be deprived of his property without due process of law. The jurisprudence has extended this protection to traditional forms of real, personal and intangible property as well as the right to certain government benefits. *Board of Regents v. Roth*, 408 U.S. 564, 569–572, 92 S.Ct. 2701, 2705–2707, 33 L.Ed.2d 548 (1972).

■ Before the Court determines whether to apply the constitutional guarantee of procedural due process, it must first determine "the presence of a legitimate 'property' or liberty interest within the meaning of the Fifth or Fourteenth Amendment." *Arnett v. Kennedy*, 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15 (1974); *Board of Regents v. Roth*, 408 U.S. at 572, 92 S.Ct. at 2706. If the Court determines the existence of certain property or liberty interests, it must decide what procedures constitute "due process of law" *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977).

In *Board of Regents v. Roth*, the Court identified the sources of property interests: "Property interests ... are not created by the constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

The Puerto Rico Supreme Court has discussed the presence of a property interest in the context of universities in Puerto Rico. In *Selosse v. Fundacion Educativa Ana G. Mendez*, 122 D.P.R. 534 (1988), a college professor sued a private university claiming that school officials had discriminated against her in its decision to deny her tenure. The Court held that the contract between plaintiff and the university had incorporated the statutes and bylaws regarding the procedures to grant or deny tenure. *Id.* at 548–549. The Court concluded that courts had an obligation to ensure that such procedural measures, once granted to the plaintiff, were followed by the defendants. *Id.* at 549.

■ The facts of the present case reveal a strikingly similar scenario. Plaintiff Dr. Hitoshi Ombe, a math professor hired by the University of Puerto Rico, claims that university officials denied him tenure due to his national origin and ethnicity. He claims that the University conducted his tenure evaluation in an arbitrary manner contrary to the criteria established by the University of Puerto Rico Rules and Regulations Code and Procedures. Based on the documents submitted by the parties, (Docket # 37, Exhibit 1, Articles 49–49.3.11 "Evaluation of Faculty", Docket # 34, Exhibits E and F, Reglamento General U.P.R.), the Court concludes that plaintiff had a property interest in the application of University procedures to grant or deny him tenure.

■ The evidence before the Court reveals that defendants provided plaintiff with due process prior to the implementation of the recommendations of dismissal made by the Departmental Committee, the Faculty Committee and the Dean. The Supreme Court has held that the due process clause requires that a tenured public employee be granted oral or written notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Departmental Committee evaluated plaintiff and made recommendations to him in May 2 of 1990 (Docket # 30, Translated Exhibit 3). Plaintiff received a copy of the recommendations approximately one week after the Committee prepared the report (Plaintiff's Deposition p. 47, line 14, p. 48, line 6). Dr. Ombe then submitted a written document in reac-

tion to his evaluation of May 2, 1990 (Plaintiff's Deposition, p. 50, line 21–p. 51, line 10). Plaintiff attended a meeting of the Departmental Committee and submitted documents to the Committee on December 4, 1990 (Plaintiff's Deposition p. 53–54; p. 56, line 15–p. 57, line 20).

The Departmental Committee presented an evaluation dated December 12, 1990, which recommended the termination of plaintiff's probationary appointment (Docket # 30, Translated Exhibit 6). Plaintiff received this evaluation in January 1991. After receipt of the letter dated December 12, 1990, the plaintiff appealed to Dean Arce. In his appeal, plaintiff argued that the Departmental Committee had violated University Regulations (Docket # 27, Defendants' Exhibit 7, Letter of Rurico S. Diaz Aponte to Dean Rafael Arce, March 7, 1991). On May 1, 1991, the Departmental Committee again evaluated the plaintiff and delivered its report to plaintiff on or about the end of May, 1991 (Plaintiff's Deposition, p. 80, lines 14–20).

The Faculty Committee evaluated the plaintiff in June of 1991 and unanimously recommended that his contract not be renewed. The Committee provided a report to plaintiff. Moreover, the Faculty Committee gave the plaintiff an opportunity to meet and discuss the evaluation (Plaintiff's Deposition, p. 85, lines 9–22). At the Faculty Committee meeting of October 29, 1991, which lasted about 45 minutes, the plaintiff presented a written document explaining his position and the Committee gave him an opportunity to discuss it (Plaintiff's Deposition, p. 85, line 9–22, p. 87, lines 9–23). After plaintiff received in April 1992 the letter from Chancellor Fernandez, which informed him the termination of his probationary appointment effective June 30, 1992, plaintiff filed an appeal before the President of the University of Puerto Rico (Plaintiff's Deposition, p. 100).

The description of the administrative procedures provide the Court with sufficient evidence that the University granted plaintiff Dr. Ombe with appropriate due process before termination of his contract. Accordingly, plaintiff's § 1983 claim pursuant to the Fifth and Fourteenth Amendment Due Process Clause is dismissed.

## II. Plaintiff's Failure to Meet Burden of Proof Under Title VII

Plaintiff claims a cause of action under Title VII, which prohibits discrimination on the basis of race, color, religion, sex or national origin. In the present case, plaintiff alleges that defendants terminated his employment on the basis of his national origin and ethnicity. Upon a careful examination of the parties's arguments and the applicable law, this Court concludes that plaintiff has failed to establish the requisite proof to sustain his Title VII claim. Accordingly, plaintiff's Title VII claim against defendants is dismissed.

■ Even in cases involving motive or intent, the Court may grant summary judgment if the non-moving party bases his actions merely upon "conclusory allegations, unprovable inferences and unsupported speculation" *Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993).

■ In Title VII cases which allege discrimination, the plaintiff must present direct evidence of discriminatory intent. If he lacks such evidence, the Court must analyze his or her claim under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668 (1973). Pursuant to this jurisprudence, the plaintiff in a Title VII claim must establish a prima facie case of racial discrimination by showing: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Id.* at 805, 93 S.Ct. at 1825.

■ Under this test, the plaintiff must establish a prima facie case showing that the allegedly discriminatory action would not have occurred but for his national origin. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50

L.Ed.2d 471 (1977). Once the plaintiff meets his initial burden of proof, it creates an inference that the employer discriminated due to race or national origin. *McDonnell Douglas,* at 805, 93 S.Ct. at 1825; *Mesnick v. General Electric Company,* 950 F.2d 816, 823 (1st Cir.1991).

■ Plaintiff argues that he has established a prima facie case: that he is a member of a protected class as an Asian; (2) that he qualified for the position; (3) that the university terminated his appointment despite his qualifications and; (4) that the employer chose other less qualified applicants to fill his position. However, the evidence before the Court demonstrates that defendants did not consider plaintiff's national origin. Plaintiff admitted in his deposition that in his initial objection to his termination he failed to mention racial or ethnic discrimination as a possible cause for his dismissal. On the document which Dr. Ombe submitted to the faculty meeting of December 4, 1990, he failed to mention any kind of discrimination by reason of race or mistreatment or unequal treatment against him (Plaintiff's Deposition, p. 68, lines 16–25, p. 69, lines 19–21). He also admitted that during the meeting he held with Mathematics Department Director Mr. Jorge Lopez on December of 1990, he failed to mention that he was being subject to harassment by reason of racial discrimination. (Plaintiff's deposition, p. 72, lines 6–12). This Court's careful perusal of the evidence leads it to conclude that plaintiff has failed to establish a prima facie case of racial or ethnic discrimination.

Assuming, arguendo, that plaintiff managed to establish a prima facie case of racial discrimination, he would be unable to surmount the next requirement under the *McDonnell Douglas* Test.

■ Once the plaintiff has established a prima facie case of racial discrimination, the burden of proof shifts upon the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *see also Lehman v. The Prudential Insurance Company of America,* 74 F.3d 323, 327 (1st Cir.1996). This is only a burden of production and not a burden of persuasion, since it is the claimant that has to prove discrimination at all times. As recently noted by the Supreme Court, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

■ If the defendant articulates a legitimate reason for the employment decision, the plaintiff has to present evidence which establishes that the employer's reasons are mere pretext for discrimination. Plaintiff must establish either that the employer's reason was a pretext or that the actual reason for the adverse employment decision was discrimination. *Lehman* at 327.

■ We have already noted the plaintiff's failure to establish a prima facie case of racial discrimination. This would constitute sufficient grounds to dismiss plaintiff's Title VII claim. *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993). Nevertheless, we also conclude that defendants have provided a non-pretextual reason for plaintiff's termination. The evidence sustains the finding that there were good and valid reasons for not renewing plaintiff's probationary appointment. In the letter from the Committee to Dr. Ombe dated May 2, 1990, the Committee expressed concern with his level of mathematics productivity, as well as the fact that the students had difficulty understanding his oral communication (Docket # 30, Translated Exhibit 3, Letter from the Committee on Promotions to Hitoshi Ombe). Plaintiff admitted to having difficulties for reasons other than discrimination. Plaintiff noted that he encountered a series of personal and health problems, such as having trouble with traffic; teaching schedule; poor administration of electric company; severe headache and high blood pressure; Puerto Rico's hot weather; problems with his landlord and a realtor and others which he invoked as reasons for his lack of productivity (Docket # 27, Exhibit # 5, "Causes for the Delay of Research").

Based on the above discussion, plaintiff's Title VII claim against defendants is dismissed.

### Plaintiff's § 1981 Claim is Time–Barred

It is clear that the state's statute of limitations for personal injury claims applies to claims under 42 U.S.C. § 1981. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 658–662, 107 S.Ct. 2617, 2619–2622, 96 L.Ed.2d 572 (1987); *Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 574, 102 L.Ed.2d 594 (1989). Puerto Rico's applicable statute, P.R.Laws Annotated, Title 31 § 5298 (1991), prescribes a one-year limitations period beginning on the date of accrual.

The filing of a Title VII action does not toll the section 1981 statute of limitations, even if predicated upon the same alleged act of employment discrimination. *Johnson v. Railway Exp. Agency Inc.,* 421 U.S. 454, 465–466, 95 S.Ct. 1716, 1722–1723, 44 L.Ed.2d 295 (1975). Moreover, plaintiff's administrative appeals through the University of Puerto Rico do not toll the statute.

The Supreme Court noted in *Delaware College v. Ricks:*

> we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period. *Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229 [97 S.Ct. 441, 50 L.Ed.2d 427] (1976). The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made. 449 U.S. 250, 261, 101 S.Ct. 498, 506, 66 L.Ed.2d 431 (1980).

Pursuant to this jurisprudence, the Court concludes that plaintiff's appeal or request for reconsideration of the April 3, 1991 recommendation that his appointment be terminated did not toll the running of the statute of limitations. The Court added in *Ricks:* "We do not suggest that aspirants for academic tenure should ignore available opportunities to request reconsideration. Mere requests to reconsider, however, cannot extend the limitations periods applicable to the civil rights laws" *Id.* at 261, n. 15, 101 S.Ct. at 506, n. 15.

As noted by the Court in *Ricks,* the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful. 449 U.S. at 257, 101 S.Ct. at 504. It is well-settled law that the statute of limitations starts to run when the plaintiff knows or had reason to know of the injury which is the basis of his action. *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 353 (1st Cir.1992). It is clear that Dr. Ombe became aware, or should have become aware of the alleged discrimination by December 12, 1990, when the Departmental Committee informed him that the University of Puerto Rico would not renew his contract for the 1991–92 academic year (Docket # 27, Defendants' Exhibit 6). Defendants reiterated their decision to deny him tenure and terminate his contract on several occasions after the initial letter of December 12, 1990. The Departmental Committee conducted another evaluation of Dr. Ombe and again counseled advised termination of his appointment, on April 3, 1991 (Docket # 27, Defendants' Exhibit 8). Finally, plaintiff admits in his deposition that he received yet another notification of the Faculty Committee Evaluation on September 1991 (Plaintiff's deposition, p. 91). Plaintiff filed the present claim before this Court on October 16, 1992. Plaintiff's contention that his cause of action accrued from the receipt of the Chancellor's letter fails to sway the Court. The Chancellor's letter, dated April 21, 1992, became simply "the time when the consequences of the acts became most painful." *Delaware State College,* 449 U.S. at 258, 101 S.Ct. at 504; *Chardon v. Fernandez,* 454 U.S. 6, 7, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981).

Accordingly, the Court holds that plaintiff's § 1981 claim against defendants are time-barred and are hereby dismissed.

As noted by the First Circuit, summary judgment has a special niche in civil litigation. Its role is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine,* 976 F.2d 791,

794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 314 (1st Cir.1995). Pursuant to the above discussion of applicable law, defendants' Motion for Summary Judgment is **GRANTED.** (Docket # 24).

**Plaintiff's State Claims Under Article II, § 7 of Puerto Rico Constitution, Art. 1802 of the Civil Code of Puerto Rico, Law 100 and Law 80**

 This Court declines to exercise jurisdiction over plaintiff's' remaining state claims against the defendants. (Plaintiff's Complaint, Fourth Cause of Action, ¶¶ 55–57) Plaintiff filed claims pursuant to Article 1802 of the Puerto Rico Civil Code, Law No. 100 of June 30, 1959, and Law No. 80 of May 30, 1976, 29 L.P.R.A. § 185a. This Court feels that these claims could properly be adjudicated in the local courts of Puerto Rico. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). See also *Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995) (affirming dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed.")

Accordingly, plaintiff's state-law claims against defendants are also **DISMISSED.** Judgment shall be issued accordingly.

**SO ORDERED.**