**Hilda RODRIGUEZ, Plaintiff,**

v.

**SMITHKLINE BEECHAM PHARMACEUTICAL, PUERTO RICO, INC., et al., Defendant.**

**Civil No. 98–1649(JP).**

United States District Court, D. Puerto Rico.

July 8, 1999.

José E. Colón Santana, San Juan, PR, for plaintiff.

Gregory T. Usera, Schuster Usera Aguiló & Santiago, San Juan, PR, for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION AND BACKGROUND

Before the Court are Defendant's SB Pharmco Puerto Rico, Inc.'s ("SmithKline") Motion for Summary Judgment and Memorandum in Support thereof (**docket No. 41**), Plaintiff's Motion and Memorandum in Opposition thereto (**docket No. 54**), and SmithKline's Reply to Plaintiff's Opposition. Plaintiff brought the Complaint in the above-captioned case claiming that her employer SmithKline, in violation of Title VII, 42 U.S.C. § 2000e, and the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), discriminated against her because of her sex.

Plaintiff Hilda Rodríguez is a woman who lives in Cidra, Puerto Rico, and has worked at SmithKline since 1979. During her tenure at SmithKline, Plaintiff alleges that she has been the victim of gender-based discrimination. There are three parts to Plaintiff's case.

The first deals with an EPA claim. In 1986, Plaintiff began working at SmithKline's Documentation Department as a Senior Documentation Monitor at a Level E. At the time she started there, Plaintiff had to report to the Documentation Leader, Gloria Valés ("Valés"), who occupied a Level 7 position. Levels represent SmithKline's compensation scale. In 1989, Manuel Llivina ("Llivina") substituted Valés, who had been transferred to handle other duties within the company. Like Valés, Llivina occupied a Level 7 position and was then the person to whom Plaintiff had to report. In 1991, Rodoberto Feo ("Feo") was designated Manager at the Documentation Department. Feo, like Plaintiff, reported directly to Llivina but occupied a Level 8 position. In 1992, both Llivina and Feo were transferred out of the Documentation Department.

With Llivina and Feo gone, James Sanabia ("Sanabia"), Vice President for Quality Control/Quality Assurance, asked Plaintiff to propose a job description for a new position she would occupy, "Documentation Leader." According to Plaintiff, this position would consolidate Llivina and Feo's responsibilities with those she had in 1992. In January of 1993, Sanabia announced the approval of the job description. To Plaintiff's dismay, however, the position was approved at a Level 6. Plaintiff argues that because she was paid less than her predecessors at the Documentation Department and performed the same job, SmithKline discriminated against her because of her gender and therefore violated the EPA. Plaintiff adds that as a Documentation Leader, she had less resources but more responsibilities than her predecessors.

The second cause of action results from the hiring in 1995 of Edwin López as SmithKline's Analytical Services Leader. Plaintiff argues that SmithKline passed her over for the less experienced López and that such action constitutes a Title VII violation.

Third, Plaintiff states that as a result of organizational changes at SmithKline, both she and López were designated as Compliance Process Improvers. In September of 1996, however, Plaintiff learned that while both held the same position, López was paid more than she was. He was a Level 8 while she was a Level 6. Plaintiff asked the reason for this disparity and was told that López's title had been changed to "Strategist." Plaintiff says that this change in title was merely a pretext to cover that both she and López performed

the same job and were paid differently. Plaintiff says that the disparity in pay was driven by a discriminatory animus in violation of Title VII and the EPA.

## II. UNCONTESTED FACTS

Based on the pleadings, sworn statements, admissions, and uncontested documents on the record, the following facts are uncontroverted. Plaintiff Hilda Rodríguez began working at SmithKline in August of 1979 as an Analytical Chemist and a Level C employee. To this day, Plaintiff still works at SmithKline.

In December of 1985, Plaintiff was promoted to Senior Analyst as a Level E employee. In 1986, Plaintiff applied for the position of Senior Documentation Monitor in the Documentation Department with successful results, and was transferred there as a lateral change, not receiving an increase in salary. While at the Documentation Department, Plaintiff was reclassified as a Level F employee and worked under the supervision of the Documentation Manager Gloria Valés. In 1989, Valés was transferred out of the Documentation Department and was substituted by Manuel Llivina, who held a Level 7 position. Rodoberto Feo also worked as Records Management Leader at the Documentation Department and held a Level 8 position.

In January of 1991, Plaintiff was promoted to be the Administrator of the Quality Assurance Process Operation Management System. In 1992, Llivina was transferred out of the Documentation Department to Tablet Manufacturing. In January of 1993, Plaintiff was tapped as the candidate to fill the position of Documentation Leader. This position was approved at a Level 6. The Documentation Manager and Leader positions overlapped in some areas such as: reviewing, evaluating and approving standard operating procedures; maintaining records under strict control for their retrieval during audits; developing administrative and technical presentations; and serving as Smith-Kline's contact for Food and Drug Administration investigations. Notwithstanding this overlap, in creating the Documentation Leader position, SmithKline eliminated some of the responsibilities the Documentation Manager position had, such as being in charge of the Microfilming Program, handling new drug applications, preparing annual reviews, evaluating significant abnormalities reported in manufacturing operations, and deciding whether "a particular situation presented a potential recall and initiating the necessary action." (Def's Ex. 7).

On January 16, 1995, Edwin López was hired by SmithKline at a Level 8 as an Analytical Service Leader, the person in charge of managing SmithKline's Quality Control Laboratories. This position requires a master's degree in chemistry, a degree which López has and Plaintiff lacks. At one point, both López and Plaintiff were Compliance Process Improvers, for the Quality Control Area and Quality Assurance Area, respectively. While occupying the position of Compliance Process Improver, however, López retained his responsibilities of managing SmithKline's Quality Control Laboratory. The responsibilities of the Compliance Process Improver and the Analytical Service leader are different and Plaintiff has never managed any of SmithKline's laboratories. Thereafter, López's title was changed to Strategist.

On October 6, 1996, Plaintiff filed an intra-company discrimination claim in the form of a letter to Jan Leschly. Thereafter, Plaintiff filed an administrative complaint with the Puerto Rico Antidiscrimination Unit on June 13, 1997.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment serves to "assess the proof in order to see whether there is a genuine need for a trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). Under Rule 56(c) of the Federal

Rules of Civil Procedure, a summary judgment is in order when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz,* 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial-worthy issue as to some material fact"). *Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *see Canal Insurance Co. v. Benner,* 980 F.2d 23, 25 (1st Cir.1992). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In a summary judgment motion, the movant bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the movant does not bear the burden of proof at trial, it must show that no reasonable fact-finder could find that the non-movant has established the requisite elements of its claim. *Id.* at 325, 106 S.Ct. 2548. Once the moving party meets his burden of proof, the burden shifts to the non-movant, who may not "rest upon mere allegations or denials of . . . the pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Goldman,* 985 at 1116; *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) The Court assesses the parties' arguments within this procedural structure.

## IV. DISCUSSION

### A. Timeliness of the Title VII Claim Regarding López's Hiring

Defendant argues that the Court should dismiss Plaintiff's Title VII claim relating to López's hiring as Analytical Service Leader as time-barred. López was hired on January 16, 1995, and therefore, in accordance with the law, Plaintiff had to file an administrative complaint with the Puerto Rico Anti-discrimination Unit within 240 days of that date.[1]

An individual who seeks relief under Title VII must first file a charge with the EEOC " 'within one hundred and eighty days after the alleged employment practice occurred.' " *Johnson v. General Electric,* 840 F.2d 132, 133 (1st Cir.1988) (citing 42 U.S.C. § 2000e–5(e)). The time period for deferral states like Puerto Rico, is extended to 300 days if the aggrieved person has first instituted proceedings with a State or local agency with authority to grant relief for such alleged discriminatory practices. *See id.* In such case, however, the aggrieved individual must file the charges with the EEOC within 240 days of the violation to allow 60 days for deferral to the state agency. *See id.* Because the deadline for filing will be determined by the date when the 300 day clock starts running, it is essential to establish the start-off point, the date of accrual of Plaintiff's claim.

1. The Court notes that Sonia Berríos' unsworn declaration under penalty of perjury states that López was hired on January 16, 1995, and López states in an unsworn declaration under penalty of perjury that he started working on January 16, 1996. (Def's Ex. 26 & 27).

■ Determining a date of accrual in a Title VII case is an issue governed by federal law. *See Rivera Muriente v. Agosto–Alicea,* 770 F.Supp. 770, 773 (D.Puerto Rico 1991) (Pieras, J.) (citing to *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)), *aff'd,* 959 F.2d 349 (1st Cir.1992). The date of accrual represents the date when the Plaintiff knows, or has reason to know, of the injury upon which the action is based, and not the point when the consequences of the act became most painful. *See Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 353 (1st Cir.1992); *Johnson v. General Electric,* 840 F.2d 132 (1st Cir.1988) (citing to *Delaware State College v. Ricks,* 449 U.S. at 258, 101 S.Ct. 498 and *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir.1979)); *Ombe v. Fernández,* 914 F.Supp. 782 (D.Puerto Rico 1996). Because the discriminatory act at issue is López's hiring resulting in the passing over of Plaintiff for the position, the date of López's hiring starts the limitations period. López was hired in January 16, 1995, and Plaintiff filed her administrative complaint in June of 1997. Therefore, Plaintiff filed the complaint well after 300 days after López's hiring.

Further, even if the accrual date is more liberally construed as starting when Plaintiff knew or should have known that she was passed over for López as Analytical Service Leader, more than 300 days would have passed by the time the administrative complaint was filed. The Court finds that although the parties do not state when did Plaintiff learn of López's hiring, Plaintiff could not have learned of López's hiring so much time ·after the fact so as to come within the 300 days leading up to the administrative filing. In order for Plaintiff's Title VII claim regarding López's hiring to be timely, she must have realized that he was hired more than a year and a half after the fact. This is an unrealistic proposition, especially because both López and Plaintiff worked in the same plant dealing with areas which, according to Plaintiff, are overlapping. For this rea-

son, the Court finds that Plaintiff's cause of action accrued more than 300 days before the filing of the administrative complaint.

■ In its reply, SmithKline points to Plaintiff's statement of uncontested facts for the proposition that an intra-company discrimination claim was filed by Plaintiff on October 6, 1996 in the form of a letter to Jan Leschly. (Pl.Mem.Ex.16). Even if it were argued that the filing of the letter tolled the statute of limitations in this case, the ·Court disagrees with such contention. This employer grievance procedure cannot toll the running of the limitations because the remedies under Title VII are independent from those obtainable through a company's grievance procedure. *See International Union of Electrical, Radio and Machine Workers, AFL—CIO, Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 236–38, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (stating that the remedies of Title VII are independent from remedies available as a result of intra-company grievance procedures).

■ Finally, SmithKline argues that Plaintiff's Title VII claim for the hiring of López is time-barred because her claim is not subject to the continuing violation theory. The continuing violation doctrine creates an exception to the 300–day period of limitations to file the administrative complaint when the unlawful behavior is ongoing. *See Provencher. v. CVS Pharmacy, Division of Melville Corp.,* 145 F.3d 5, 14 (1st Cir.1998) (citing to *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 221 (1st Cir.1996); *Sabree v. United Brotherhood of Carpenters and Joiners Local No. 33,* 921 F.2d 396, 400–02 (1st Cir.1990); *Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir.1990)). Continuing violations may· be serial or systemic. *See id.* (citing to *Pilgrim v. Trustees of Tufts College,* 118 F.3d 864, 869 (1st Cir.1997)). A systemic violation is derived from general discriminatory policies or practices. *See id.* (citing to *Sabree v.*

*United Brotherhood of Carpenters*, 921 F.2d 396, 400 n. 7 (1st Cir.1990)). In a case of a systemic violation, the plaintiff argues that the defendant has a system in place which is discriminatory. In this case, Plaintiff fails to present any compelling evidence which would create an issue of fact that there is a discriminatory system in place. Plaintiff attempts to present statistics to show the existence of a discriminatory policy against women at SmithKline. Her effort to infer such policy from a statistical figure indicating that "SmithKline's selection rate of men for Level 7 and higher managerial positions is more than 75% of the rate of women" is not enough. *See Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 184 (1st Cir.1989) (stating that Plaintiff's "effort to have [the Court] infer a [discriminatory] policy from statistics showing a low percentage of black and females in upper-level positions at A & P leaves too much to be desired."). Plaintiff cannot expect the Court to allow her to characterize this case as one of systematic violations without offering the Court with timely and complete evidence regarding the issue. The Court notes that the pretrial conference has already been held and that, at the time of this writing, trial is approximately three weeks away.

Finally, the Court has already determined that Plaintiff could have realized at every step of the way that she was suffering acts which were allegedly discriminatory. Therefore, the case does not fall within the serial violation prong of the continuing violation theory. In view of the above, the Court hereby **DISMISSES** Plaintiff's Title VII claim pertaining to López's hiring.

## B. Title VII Gender–Based Wage Discrimination

SmithKline further states that the Court should dismiss Plaintiff's Title VII claim alleging that SmithKline discriminated against her by paying López more · for doing the same job. Before delving into the merits of SmithKline's arguments, the Court must determine the applicable evidentiary structure for this type of claim in light of the Bennett Amendment to Title VII. The Bennett Amendment incorporated the EPA defenses into Title VII by stating that

> It shall not be an unlawful employment practice under [Title VII] for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiating is authorized by the provisions of [the EPA].

*Mullenix v. Forsyth Dental Infirmary for Children*, 965 F.Supp. 120, 143 (D.Mass. 1996). The question left open by the Bennett Amendment is the extent it changed the *McDonnell Douglas* evidentiary framework. The First Circuit has not expressed itself as to which evidentiary structure would apply in a Title VII gender-based wage discrimination claim. Furthermore, there is a split among the circuits regarding the effect of the Bennett Amendment on gender-based wage discrimination cases. The Fourth, Fifth, Seventh, Tenth, and Eleventh Circuits state that a defendant in a Title VII gender-based wage discrimination claim may present one of the EPA's four defenses justifying differences in pay for substantially equal work, namely: seniority, merit, quantity or quality of production, or differential on a factor other than sex. *See id.* (citing to *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 410–12 (10th Cir.1993); *Fallon v. State of Illinois*, 882 F.2d 1206, 1213 (7th Cir.1989); *Brewster v. Barnes*, 788 F.2d 985, 992–93 (4th Cir.1986); *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1136 (5th Cir.1983)). Under this interpretation and absent direct evidence of discrimination, a Title VII case for gender-based wage discrimination is presented under "the burden shifting framework," commonly known as the *McDonnell Douglas* structure. Under *McDonnell Douglas*, a plaintiff must set forth a prima facie case, which shifts the

burden of production, not the burden of persuasion, to the defendant to state a legitimate and nondiscriminatory justification for the employment decision. *See Hazel v. United States Postmaster General,* 7 F.3d 1, 3 (1st Cir.1993). Following a defendant's satisfaction of its light burden, the presumption of discrimination established by the prima facie case disappears from the case and the plaintiff must prove that the justification is merely a pretext for discrimination. *See Smith v. F.W. Morse & Co.,* 76 F.3d 413, 421 (1st Cir. 1996).

The Sixth, Eighth, and Ninth Circuits state that the Bennett Amendment is a way to say that EPA liability automatically leads to Title VII liability for gender-based wage discrimination. *See Meeks v. Computer Associates International,* 15 F.3d 1013 (11th Cir.1994) (citing to *Korte v. Diemer,* 909 F.2d 954, 959 (6th Cir.1990); *McKee v. Bi–State Dev. Agency,* 801 F.2d 1014, 1019 (8th Cir.1986); *Kouba v. Allstate Insurance Co.,* 691 F.2d 873, 875 (9th Cir.1982)). That is to say, that a plaintiff claiming gender-based wage discrimination, can establish Title VII liability by establishing EPA liability. Under the EPA, a plaintiff must first establish that "the employer paid different wages to an employee of the opposite sex for substantially equal work." *Byrd v. Ronayne,* 61 F.3d 1026, 1033 (1st Cir.1995). To make this showing, the plaintiff must prove that " '(i) the employer pays different wages to employees of the opposite sex; (ii) the employees ... perform equal work on jobs requiring equal skill, effort, responsibility; and (iii) the jobs are performed under similar working conditions.' " *Mullenix v. Forsyth Dental Infirmary for Children,* 965 F.Supp. at 139 (citing to *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1310 (2d Cir. 1995)). Unlike Title VII, in an EPA case, after the plaintiff establishes a prima facie case, the defendant faces a burden of persuasion, not just a burden of production, to try to bring forth one of the aforementioned defenses. Should the defendant fail in this undertaking, EPA liability is established. Therefore, once the plaintiff presents a prima facie case, the load of the case falls on the defendant's shoulders. In a Title VII disparate treatment case, Plaintiff shoulders the burden of persuasion at all times. Plaintiff agrees with this interpretation. (Pl's Opp'n at 7).

This Court is compelled by the conclusion reached by the Fourth, Fifth, Seventh, Tenth, and Eleventh Circuits, that Title VII liability does not necessarily flow from EPA liability. The Court finds that altering the evidentiary structure under Title VII just because the means used to discriminate dealt with compensation is nonsensical. The *McDonnell Douglas* structure seeks to establish disparate treatment discrimination. The evidence needed to prove discriminatory treatment should not vary just because an employer chose to discriminate against an employee by means of compensation rather than by not promoting or not hiring her. In view of the above, and because the Plaintiff's case is for disparate treatment, the Court shall analyze SmithKline's Summary Judgment Motion through the *McDonnell Douglas* lens.

Under the *McDonnell Douglas* approach for gender-based wage discrimination, a Plaintiff must establish a prima facie case by showing by a preponderance of the evidence that she has a job similar to that of higher paid males. *See Miranda v. B & B Cash Grocery,* 975 F.2d 1518, 1529 (11th Cir.1992). Once that prong is established, the defendant must merely provide a non-discriminatory reason, for the disparity. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The third stop in the evidentiary structure is that the plaintiff must demonstrate by a preponderance of the evidence that the employer's reason is a pretext for unlawful discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507–508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In the instant case, Plaintiff argues that SmithKline discriminated against her on the basis of her sex by paying her at a Level 6 for her job as a Compliance Process Improver, while paying Edwin López, who also was a Compliance Process Improver, at a Level 8. SmithKline, however, argues that Plaintiff will not establish a prima facie case of wage discrimination under Title VII because, despite their similar titles as Compliance Process Improvers, it is functions not titles that matter when comparing jobs under Title VII, and Plaintiff will not be able to prove that at any point her job was substantially similar to that of López, her male counterpart. Particularly, SmithKline indicates that while he was a Compliance Process Improver, López retained his responsibilities of managing the Quality Control laboratories, as Analytical Service Leader, and that Plaintiff stayed just as a Compliance Process Improver. In view of the difference in responsibilities, SmithKline states that López's title changed to Strategist.

The Court agrees with Smith-Kline, particularly because, as Plaintiff admitted in her deposition, her position as Compliance Process Improver was different than that of the Analytical Service Leader. (Def's Ex. 21 at III 121–122). Plaintiff did not occupy the position and did not have the responsibilities of Analytical Service Leader, who was in charge of managing the laboratories, and López did and does. (Def's Ex. 32 at II–125, III 29–31, and III 121–22).

In her Opposition, Plaintiff relies on evidence that goes to the similarity between the Compliance Process Improver positions. Plaintiff cites José L. Rosado Manzanet, the manager of SmithKline's Cidra plant, who during his deposition stated that the Compliance Process Improvers positions "coincide except that they have different areas." (Pl's Ex. 19 at 100). Plaintiff also provides deposition testimony for the proposition that López and she both identified areas of process improvement in SmithKline's laboratory area and that both approved of investigations performed in SmithKline's laboratories. (Pl's Ex. 6 at 60 and Ex. 1 at 69). The Court finds, however, that this testimony does not go to the heart of the matter, namely whether Plaintiff and López did the same things. Even if their positions overlapped in some areas, the fact remains that, as Plaintiff acknowledges in her deposition, she has never been in charge of Smith-Kline's laboratories, and López did and does. Therefore, even if Plaintiff and López's responsibilities as Compliance Process Improvers may be similar, while he occupied the position of Compliance Process Improver, López remained handling the responsibilities of his first position, that of managing the laboratories.

Plaintiff also relies on López's deposition testimony for her position that his job did not change much when his title was changed to Strategist. (Pl's Ex. 4 at 43). By citing to this testimony, Plaintiff reasons that if both López and she had similar jobs when both were Compliance Process Improvers, then working as a Strategist did not add much, and therefore, even as a Strategist, Plaintiff and López performed the same job. Because their jobs differed, however, López's deposition testimony stating that his duties did not change much when his title changed to Strategist supports SmithKline's position. Because López was handling the job of Compliance Process Improver and Analytical Service Leader, the change to Strategist was not meant as a promotion or addition of responsibilities, but as a way to reflect the reality of his double role. Thus, López's deposition serves to confirm SmithKline's position.

Further, throughout her tenure Plaintiff has not occupied the Analytical Service Leader position because it requires a master's degree in chemistry which López has and Plaintiff lacks. (Def's Ex. 1 at 2 & Ex. 21 at II–125). Therefore, in view that the Court finds that it is uncontroverted that the jobs of López and Plaintiff's are

not similar, Plaintiff lacks a prima facie for gender-based wage discrimination.

Further, even if Plaintiff had a prima facie case, she must present admissible and sufficient evidence to create an issue of fact that the reason advanced by the employer for the adverse action was a pretext to discriminate. *See LeBlanc v. Great American Insurance,* 6 F.3d 836, 842 (1st Cir.1993). To prove pretext, the *LeBlanc* Court stated that the First Circuit has "always required not only 'minimally sufficient evidence of pretext,' but evidence that overall reasonably supports a finding of discriminatory animus." *Id.* at 842–43. At this stage, the defendant has already eliminated the presumption of discrimination. " 'The presumption . . . simply drops out of the picture. . . . [T]he trier of fact proceeds to decide the ultimate question: whether' the 'plaintiff has proven that the defendant intentionally discriminated against' [her because of her gender]." *Id.* at 843 (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. at 510–11, 113 S.Ct. 2742). If rebutting Defendant's reasons without evidence of discriminatory animus were enough to attach Title VII liability, an employer could be held liable under Title VII for untrue, yet nondiscriminatory reasons. Rejection of Defendant's proffered reasons cannot result in a finding of intentional discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. at 511, 113 S.Ct. 2742.

▮▮▮ In the instant case, Plaintiff argues that SmithKline's reasons for the difference in pay are a pretext because López's job did not entail more responsibilities and technical knowledge than hers. Further, Plaintiff states that she can prove that the discrimination against her is partly evidenced by the lower percentage of women in higher level positions at Smith-Kline than men. In particular, Plaintiff states that SmithKline's selection of men for level 7 and higher managerial positions is more than 75% of the rate for women. Further, Plaintiff states that in the Compliance Department of SmithKline there

are no women above level 6. The Court must therefore ask whether or not these allegations, as supported by the evidence, suffice to meet the third prong of the *McDonnell Douglas* test. The Court notes that statistical evidence cannot by itself prove a disparate treatment case and, therefore, cannot be presented in a vacuum. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Hazelwood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Miles v. M.N.C. Corp.,* 750 F.2d 867, 872–73 (11th Cir. 1985). In this case, Plaintiff does not provide a sample of how many qualified women were up for promotion, were hired, or were qualified for positions at SmithKline. The Court finds that Plaintiff fails to place the statistical evidence within a proper context. There may be other explanations for the lower percentage. For instance, it is no mystery that in the past, the percentage of women with university degrees and therefore, in the workforce, was lower than men. To hold an employer liable on such statistical evidence as presented by Plaintiff, which can be the result of numerous factors unrelated to discrimination, would be to engage in undue speculation.

Furthermore, Plaintiff states that López's title was changed to Strategist upon her inquiring about their differences in pay and that such timing in the change is indicative of discrimination. The Court finds that such evidence is not enough to create an issue of fact. Such evidence does not suggest gender-based discrimination, but rather, that SmithKline's proffered reasons for not promoting Plaintiff are untrue.

In some instances, the First Circuit has interpreted the Supreme Court's decision in *Hicks* as stating that evidence of pretext together with the evidence supporting the prima facie case might sustain a finding of discriminatory animus sufficient to survive summary judgment. *See Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 (1st

Cir.1994). In order to prove discrimination under this precedent, the prima facie case must be strong enough to suggest to a fact-finder that if the employer's stated reasons are a pretext, discrimination could have reasonably driven the defendant. *See Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1092 (1st Cir.1995). In *Woodman*, the First Circuit stated that "[w]here the elements of a sufficient prima facie case combine with the fact-finder's belief that the ostensible basis for dismissing the employee was pretextual, *'particularly if ... accompanied by a suspicion of mendacity,'* the fact-finder is permitted to infer the intentional ... discrimination." *Id.* at 1092.

▮ In the instant case, the Court finds that the prima-facie case has not been established or presented any evidence that SmithKline's actions were based on her gender. Even if there were enough evidence to survive summary judgment as to the prima facie case and SmithKline's reasons for the pay disparity were untrue, Title VII does not prohibit a company from paying an employee less than another of the different sex "for any reason—fair or unfair—so long as the decision ... does not stem from a protected characteristic." *Rodríguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15 (1st Cir. 1999), *aff'g* Civ. No. 96–2014(JP) (D.Puerto Rico, April 21, 1998).

Because Plaintiff does not provide the Court with any evidence creating an issue of fact regarding whether SmithKline's reasons for not promoting Plaintiff to a higher level are a pretext for discrimination, the Court hereby **DISMISSES** Plaintiff's Title VII gender-based wage discrimination claim.

## C. EPA Claims

### 1. EPA Claim for Compliance Process Improver

The Court finds that the analysis above has the same effect on Plaintiff's claims under the EPA regarding Plaintiff's posi-

tion as Compliance Process Improver. Although the burden of proof to establish a claim under the EPA is different from a Title VII gender-based wage discrimination claim, the fact remains that no EPA liability will be established if plaintiff's job is not substantially similar to her male counterpart or so long as the difference in pay results from a reason other than the plaintiff's gender. The Court finds that because there is no evidence on the record for the proposition that SmithKline acted with discriminatory intentions against Plaintiff or that Plaintiff's job was substantially similar to that of López, a reasonable finder of fact could only infer that the disparity in pay between Plaintiff and her counterpart is for a reason other than her sex. Therefore, the Court also dismisses Plaintiff's EPA claims as it relates to her job as Compliance Process Improver.

### 2. Equal Pay Claim Regarding Documentation Leader

Lastly, the Court addresses Plaintiff's EPA claim as it relates to her position as Documentation Leader. Plaintiff states that James Sanabia, Vice President for Quality Control/Quality Assurance, asked Plaintiff to propose a job description for a new position she would occupy, "Documentation Leader." According to Plaintiff, this position would consolidate her responsibilities with those of her supervisor Manuel Llivina and Manager Rodoberto Feo. During their stint at the Documentation Department, Llivina, whose title was "Documentation Manager," had a Level 7 position, and Feo a Level 8. Plaintiff's Documentation Leader position was approved, however, at a Level 6. Plaintiff argues that because she was paid less than Llivina and Feo, and had more responsibilities than them, SmithKline discriminated against her because of her gender and therefore violated the EPA.

SmithKline states that Plaintiff's EPA claim alleging that, as Documentation Leader, she was not paid as much as her male predecessors in that position should be dismissed because Plaintiff has not es-

tablished a prima facie case under EPA. More specifically, SmithKline states Plaintiff's predecessors were not Documentation Leaders but Documentation Managers, a position with a different set of responsibilities and therefore not substantially similar to the former.

■ As discussed above, to prove an EPA claim, the plaintiff must first show that her job and that of her counterparts were substantially equal. *See Byrd v. Ronayne*, 61 F.3d 1026, 1033 (1st Cir.1995). Therefore, Plaintiff must prove that her job as Documentation Leader was substantially equal to that of Manuel Llivina and Rodoberto Feo. Upon reviewing the record, the Court finds that although the job profiles of the Documentation Leader (Ex. 7) and the Documentation Manager (Ex. 9) overlap in several areas,[2] there are significant differences between both positions.

For instance, when the Documentation Manager position became that of Documentation Leader, SmithKline eliminated from the latter's job profile the responsibilities of "the Microfilming Program," "the handling of the N[ew] D[rug] A[pplications]"; and the preparation of the Annual Reviews. (Def's Ex. 9 & 26). Further, SmithKline states that, although the Documentation Leader and Documentation Manager positions dealt with managing SmithKline's Documentation Department to ensure operational compliance with SmithKline standards and government regulations, the Documentation Manager was also responsible for evaluating significant abnormalities reported in manufacturing operations and recommending a course of action in to solve the matter. (Def's Ex. 3). The Documentation Leader was not in charge of these responsibilities. Further, the Documentation Manager was responsible for keeping management informed of significant deviations from standard oper-

ating procedures, and deciding whether a "particular situation presented a potential recall and initiating the necessary action." (Def's Mem. at 16). From the evidence on the record, it is clear that the Documentation Leader and Documentation Manager positions were not substantially similar and therefore Plaintiff's EPA claim for not receiving higher compensation as Documentation Leader is hereby **DISMISSED.**

■ Further, even if Plaintiff had a prima facie case, the defendant bears the burden of proof to establish that the disparity was based on a non-discriminatory reason. *See* 28 U.S.C. § 206(d)(1). The Court finds, that SmithKline has been able to present a non-discriminatory reason for the wage disparity, namely that Llivina and Feo were grand fathered to their compensation level, and therefore, even if they handled the responsibilities of someone with a lower pay level, their compensation would not be reduced. Therefore, in view of the facts relating to the extent of the similarity between the Documentation Leader and Manager positions and the veracity of SmithKline's grand fathering policies to justify the difference in pay between Plaintiff and her predecessors, Plaintiff's EPA claim as it relates to the Documentation Leader position is hereby **DISMISSED.** Therefore, the Court hereby **GRANTS** SmithKline's Summary Judgment Motion as it relates to this specific claim.

## V. CONCLUSION

In view of the analysis above, the Court finds that Plaintiff's Title VII claim for López's hiring is time-barred. Further, because Plaintiff has not been able to show sufficient admissible evidence to prove that her job as Compliance Process Improver was substantially similar to López's job or to establish that her employment condi-

---

**2.** According to their job profiles, the Documentation Leader and Manager positions have been in charge of reviewing, evaluating and approving standard operating procedures; maintaining records under strict cedures; maintaining records under strict control for their retrieval during audits; developing in administrative and technical presentations; serves as SmithKline's contact for Food & Drug Administration investigation. (Def's Ex. 3 & 7).

tions resulted out of SmithKline's discriminatory animus, the Court dismisses Plaintiff's Title VII and EPA claims regarding that position. The same holds true for Plaintiff's EPA claim regarding her position as Documentation Leader. The Court, therefore, **GRANTS** SmithKline's Summary Judgment Motion and hereby **DISMISSES** the above captioned Complaint.

IT IS SO ORDERED.